D. GILL SPERLEIN, SBN 172887
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94114
Telephone: (415) 404-6615
Facsimile:  (415) 404-6616
gill@sperleinlaw.com

Attorneys for Diamond SJ Enterprise

**United States District Court**
**Northern District of California**
**San José Division**

|  |  |
|---|---|
| ) | **Case No. 18-CV-01353-LHK** |
| ) | |
| ) | **FIRST AMENDED COMPLAINT** |
| ) | |
| ) | **42 U.S.C. §1983 –** |
| ) | |
| DIAMOND SJ ENTERPRISE, INC., ) | **FIRST AMENDMENT VIOLATIONS** |
| d/b/a SJ Live, ) | **FREE SPEECH);** |
| ) | |
| Plaintiff, ) | **FIFTH AND FOURTEENTH** |
| v. ) | **AMENDMENT VIOLATIONS (DUE** |
| ) | **PROCESS)** |
| THE CITY OF SAN JOSÉ, ) | |
| ) | **FREE SPEECH AND DUE PROCESS** |
| Defendant. ) | **VIOLATIONS UNDER ARTICLE 1,** |
| ) | **§§1AND 2 OF THE CONSTITUTION OF** |
| ) | **THE STATE OF CALIFORNIA** |
| ) | |
| | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     Diamond SJ Enterprises, doing business as SJ Live (hereinafter referred to as "Diamond" or "SJ Live") operates a live entertainment night club on the ground floor of the historic Bank of Italy Building in downtown San José.  By all accounts, S. J. Live has always operated in a safe and responsible manner.

2.      In July 2017, for the first time, the City of San José sought to revoke an entertainment permit by informing Plaintiff that it intended to revoke its permit based on various violations of the City's Entertainment Permit Code.

3.      Improper motives spurred the revocation proceedings.  Although the justification for the revocation was Plaintiff's alleged employment of an unlicensed promoter and the creation of a public nuisance, the true motivation was Defendant's interest in putting Plaintiff out of business and thereby making the Bank of Italy Building in which it operates attractive for redevelopers and to spur revitalization of the surrounding area.

4.      Constitutional deficiencies in the Entertainment Code created an ecosystem in which the City was unrestrained and could easily proceed against SJ Live.

5.      Plaintiff brings this action to challenge sections of the Entertainment Code both facially and as applied, as well as, to challenge the action taken against its entertainment permit in violation of due process.  Defendant's actions also constitute an unconstitutional taking under the Fifth Amendment.

6.      Plaintiff seeks injunctive, declaratory, and monetary relieve, as well as, attorney fees.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(4) in that the controversy arises under the United States Constitution and under 42 U.S.C. §1983 and 28 U.S.C. §§2201 and 2202.  The Court has authority to award attorneys' fees pursuant to 42 U.S.C. §1988.  Each of the acts, or threats of acts, alleged herein were done by Defendant, its officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs, and usages of the City of San José.

d. gill sperlein
the law office of d. gill sperlein

8.      Personal jurisdiction is proper over Defendant because the City of San José is a chartered city within this District and because the wrongful activity at issue occurred in this District.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

**INTRADISTRICT ASSIGNMENT**

10.      This action arose in Santa Clara County in that the the City of San José is a chartered city within Santa Clara County and a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in Santa Clara County. Accordingly, pursuant to Local Rules of Court 3-2(c) and (d), the Clerk assigned the action to the San José Division.

**THE PARTIES**

11.      Plaintiff Diamond SJ Enterprise, Inc. is a California corporation that owns and operates a live entertainment nightclub in downtown San José.  The club currently operates under the name of SJ Live.

12.      The City of San José is an incorporated city located in Santa Clara County, California.

**PROCEDURAL BACKGROUND**

13.      On July 17, 2018, San José's Chief of Police, Edgardo Garcia, issued a Notice of Intended Action advising SJ Live of the City's intention to revoke its entertainment permit effective July 28, 2017.  Police Chief Garcia cited SJMC §6.60.370 as the authority for the revocation.  Under that section, an entertainment permit may be suspended or revoked for any violation of the terms and conditions of the permit, or the San José Municipal Code.  He based the intended revocation on the following alleged violations:

- using an unlicensed promoter (violation of SJMC §6.62.200);
- leaving a significant group of patrons on the peripheral of the businesses exterior (violation of SJMC §6.60.240 (F);

- failing to have security in or near the adjacent parking lot at the time of the shooting (violation of SJMC §6.60.240 (C);
- Not maintaining a valid conditional use permit (violation of SJMC §6.60.200);
- Operating the business in such a way that it constitutes a public nuisance
  - Because the property has been the situs for acts of violence or disturbing the peace
  - Because there were violations of the Municipal Code in the form of violations of operational requirements
  - Violations of any other state law

  (violation of SJMC §6.60.290);
- Creating a public nuisance by maintaining or using the property in a manner that jeopardizes or endangers the health, safety or welfare of persons on the premises or in the surrounding areas is a public nuisance (violation of SJMC §1.13.050); and
- Operating a disorderly house (violation of Cal. Bus. And Prof. Code §25601.

14.    In response to a letter from SJ Live's counsel, The City Attorney's Office wrote a letter on August 7, 2017 acknowledging that SJ Live's conditional use permit was valid and that it "does not expire and runs with the land, so long as the permitted use continues lawfully and without interruption."

15.    Pursuant to applicable code sections, SJ Live requested an administrative hearing and Deputy Chief Mark Bustillos conducted the hearing on October 11, 2017.  On November 17, 2017 Deputy Chief Bustillos issued a Notice of and Decision on Intended Action to Revoke Entertainment Permit, in which the City announced its decision to suspend SJ Live's entertainment permit for thirty days. Deputy Chief Bustillos made the following findings without distinguishing between findings of fact and findings of law:

- Appellant violated the San José Municipal Code by hiring an unlicensed promoter (violation of SJMC §6.62.040);
  - David Embay is a "promoter" for the purpose of San José Municipal Code Section 6.62.040;

- o Appellant violated the Municipal Code requirements for promoters;
- Appellant is responsible for a promoter's conduct (SJMC§6.62.300 and 6.62.360(b));
  - o Appellant is responsible for a promoter's activities under the San José Municipal Code Section 6.62.300
- Appellant's operation creates or results in a public Nuisance (violation of SJMC §6.60.290, §1.13.050, Cal. Civ. Code §3479 and §3480, SJMC §1.13.050(A)(1), (2)(a,i) and A93) ;
  - o Appellant's promoter exited the establishment, retrieved a gun, and fired shots into the crowd;
  - o Tables were double booked resulting in crowd control concerns impacting patron safety;
  - o Security was inadequate when the doors were closed, impacting public safety (SJMC §6.60.240).

16. SJ Live appealed the suspension to the Appeal Hearings Board. The Board convened a hearing on February 8, 2018 before five of the seven appeal commissioners. One commissioner was absent, and another recused himself on the basis that he leases office space in the same building in which SJ Live operates. Rule 304 of the Rules and Regulations governing the Appeals Commission directs that, "[t]he Board may act by resolution or motion, but an affirmative vote of at least four (4) members shall be necessary for all decisions of the Board except in matters of adjournment."

17. The Board failed to uphold the portion of the decision finding that SJ Live had violated the prohibition on using unpermitted promoters. The Board did affirmatively uphold the portions of the decision holding that SJ Live's operation created or resulted in a public nuisance. In its resolution, the Board referred to the alleged public nuisance violations as "security issues." The Board's resolution read as follows:

> To find the Administrative Hearing Officer's decision to suspend Diamond SJ Enterprise dba Studio 8's public entertainment permit for 30 days because of the security

issues at or around Studio 8 on or about the night of May 28, 2017 was supported by substantial evidence.

18.    The Board mailed its written decision on February 26, 2018.

19.    On March 1, 2018, Plaintiff filed this action and sought a temporary restraining order based on its First Amendment and Due Process claims. The Court denied the motion on March 2, 2018. Dkt. No. 22.

20.    Plaintiff filed a Writ of Administrative Mandamus in Santa Clara Superior Court. *See*, *Diamond S. J. Enterprise, Inc. v. The City of San José,* 18-CV-324181. Plaintiff filed an England Reservation to preserve its constitutional claims for this Court. The state court denied the Writ.

21.    Now, Plaintiff seeks to advance its constitutional claims in this Court.

## FACTS COMMON TO ALL CLAIMS

**The History of SJ Live**

22.    SJ Live is a live music venue in San José. The majority of its live entertainment events involve Hip Hop or Rap music. This type of music is typified by its powerful political statements including anti-establishment messaging.

23.    Diamond SJ Enterprise has operated SJ Live in downtown San José since 2005. Before opening, Diamond obtained the necessary conditional use permit and entertainment permit. It has renewed those permits on a timely basis.

24.    By all accounts the club has operated responsibly and safely for the 13 years it has been opened. Nonetheless, Jenny Wolfes who owns and manages the club has caught the ire of some local politicians.

25.    In August of 2013, Wolfes opened the Gold Club, a bikini bar on Santa Clara Street in downtown San José. Then-Counselman Sam Licacardo opposed the project and tried to limit the type of entertainment the bar could offer.

26.    In 2015, Ms. Wolfes attempted to open a club next to Hopkins & Carley, a politically-connected law firm, of which former San José Major Chuck Reed is a

partner.  The law firm opposed the project.  Even though the plan met all guidelines, was properly zoned, and was not opposed by the Planning Commission, the planning director, or the Police Department, in August of 2015, the City Council voted against it 9 to 2.  Subsequently, on the third hearing for the matter in November 2016, it was discovered that Mayor Sam Liccardo and Councilman Raul Peralez had discussed the matter with other councilmembers in advance of the vote in violation of California's open government law – the Brown Act. It was reheard in front of new council in February 2017.  The Council approved a revised plan and after a nearly two-year battle, the space eventually opened as FÜZ Bar and Grill.

27.    In 2017, investors sought to purchase the historic Bank of Italy Building in which SJ Live operates.  Because the various sections were owned separately, purchasing the entire building was difficult but eventually the investors purchased the building in its entirety, subject to SJ Live's multi-year lease.  Although, Plaintiff knew the lease was protected, it worked cooperatively with the investors hoping her cooperation would at some point be beneficial.

28.    Mayor Sam Liccardo, Councilman Raul Peralez, and other City officials have demonstrated a strong interest in helping the redevelopment of the Bank of Italy Building succeed.

29.    Plaintiff is informed and believes that City Officials, for political purposes, specifically targeted SJ Live with the most severe sanctions available in order to clear the way for the redevelopment of the Bank of Italy Building.

**The Night of -**

30.    Daniel Embay had booked a performer named Lucci at a club in San Francisco, but the club had backed out.  Embay needed a location for the performer for the night of May 28, 2017.  So, when he approached SJ Live, Wolfes

agreed to book Lucci for $10,000 flat.  Lucci would pay any booking agent fees to Mr. Embay directly.

31.     Embay was not entitled to any other compensation, direct or indirect. He had no other responsibilities to SJ Live.  SJ Live provided the security, staffed the event, enforced policies and managed the booking of table service.

32.     Although Mr. Embay holds himself out as an event promoter, that was not the role he served relating to the Lucci event.  He was simply a booking agent. Although Mr. Embay does not have a San José event promoter's permit or license, the relationship he had with SJ Live did not require one as there is an exception for talent agents under SJMC §6.62.040(B)(4) which states that "[e]vent promoter does not include any of the following…An agent of an entertainer or performer who is compensated solely for negotiating his or her client's contract to perform at the event."

33.     SJ Live has strict policies including a dress code and a table/bottle booking service.  There are a limited number of tables for each event.  If someone wants to book a table, they must call the manager.  The manager goes over all policies and takes a credit card number to hold the reservation, however, the card is not charged at the time.  When patrons arrive, the manager takes them to the table and then processes the charge.  This procedure has been in place for a long time and there have never been any problems.

34.     Leading up to the event, Embay had a disagreement with the manager.  He wanted to soften the dress code to allow sneakers.  The manager explained that she would not change he operation of the club for Embay.  She made it clear that in contrast to a promoter arrangement, she was in charge of all aspects of the event.

35.     Just before midnight, on the evening of the event, patrons appeared at the door stating that they had booked and paid for table service.  The manager

confronted Embay who admitted that he had opened an account on <eventbright.com> and had sold tickets and table service.  He had done this without approval or knowledge of anyone at SJ Live.  The manager was incensed, but she was also concerned that the double bookings might cause tempers to flare.  Based on years of experience operating night clubs, she elected to cancel the event.  She closed the doors, called additional security to the front of the club and told Mr. Embay to leave.  Lt. Trayer, of SJ Special Investigations Vice Unit, later testified that this was the correct way to handle the situation given the circumstance.

36.     There was a limited amount of shoving as some patrons tried to enter before the doors were closed, but security handled it and dispersed the crowd within 15 or 20 minutes.    The manager let about 150 patrons who had already entered the club to stay until the regular closing time, but Lucci's performance was cancelled.

37.     At 1:38 a.m., after the club was closed, someone shot several shots in a privately-owned parking lot behind SJ Live.  The area is shared by several bars, restaurants, and nightclubs in the area.  No one was injured.

38.     Lt. Trayer later interviewed the manager to determine if she knew who was involved.  She did not.

39.     After the criminal investigators identified Embay as a suspect in the shooting, Lt. Trayer returned to ask the manager if she knew of someone named Daniel Embay.  She explained that he was a local promoter and that she had booked Lucci through him.  At Lt. Trayer's request, she voluntarily agreed to turn over surveillance video footage.  She reviewed some of the video with Lt. Trayer as it was being transferred, but she did not keep a copy.  She also sent Lt. Trayer a copy of an email from Embay with his picture, glad to assist in the criminal investigation.

40.     On July 17, 2017, The Chief of Police issued a Notice of Intended Action indicating the City of San José intended to revoke Diamond SJ Enterprise's entertainment permit.

41.     Jenny Wolfes' old political adversaries had stoked the flames and even inquired into whether the City could revoke the licenses of the other businesses Ms. Wolfes owns and operates.  Council Member Peralez sent an e-mail to the Chief of Police asking the question, "…why we can't/ aren't revoking her permits for all her venues?"

42.     Even though other permitted entertainment businesses had far worse violations in recent years, the actions taken by the Police Department against those businesses were far less severe.  For example, in 2012, the SJPD issued a notice of intended action to suspend MOTIF nightclub's entertainment permit after one patron shot *another* patron *inside* the club.  In 2013, the Department sought a 14-day suspension for Freddie Jr.'s after 20 various violations over the course of a year and two prior warnings.  There are other examples as well.  For example, Fiesta Night Club received a 90-day suspension after a shooting left nine people injured. Four patrons were stabbed at SP2 and it received no punishment at all. No entertainment permit has ever been revoked.

**San José's Unconstitutional Permitting Scheme -**

43.     It is unlawful for a person to maintain, manage, operate, conduct, control, or own a public entertainment business in San José without obtaining a public entertainment business permit.  SJMC §6.60.040.

44.     To apply for a permit, a business must provide detailed information including the names and addresses of all shareholders.  SJMC §6.60.345.

45.     A public entertainment business is "is a business open to the public where alcohol is sold on the premises, the premises has a maximum occupant load that exceeds one hundred persons, as determined by the fire marshal of the San

José Fire Department, and where one or more public entertainment activities are also provided or allowed." SJMC §6.60.030 (A).

46.    Under SJMC §6.60.028, public entertainment means dancing, singing, audience participation in the entertainment, or live entertainment.

47.    A separate section of the San José Municipal Code, Chapter 6.62, requires all Event Promoters in San José to be permitted or licensed.

48.    Section 6.62.040 of the Code defines "Event Promoter" as follows:

6.62.040 - Event promoter.

A.    "Event promoter" means any person who:

    1.    Is directly or indirectly responsible for the promotion of an event as evidenced by activities such as, but not limited to contracting with the principals, selecting entertainment, advertising or otherwise holding out the event to members of the general public, inviting participants to the event, renting or controlling the event site, or serving as a designated on-site representative while the event is occurring as provided in Section 6.62.350 of this chapter; and

    2.    In exchange for engaging in the promotion of the event, as described in Section 6.62.040A.1., directly or indirectly receives or shares in any of the following:

        a.    Admission or entrance fees paid by participants or spectators;

        b.    Compensation, consideration or other revenue from sponsors, private donors or managers and/or owners of the event site; or

        c.    Revenues from concessions or other sales at the event.

B.    Event promoter does not include any of the following:

    1.    A print, broadcast or internet medium that is paid solely for page space or broadcast time to advertise an event, but exercises no other financial or promotional responsibilities in connection with the event;

    2.    A ticket seller who sells admission tickets to an event from its own place of business, off-site and in advance of such event, but exercises no other financial or promotional responsibilities in connection with the event;

    3.    An entertainer or performer who is paid solely for his or her performance at an event;

d. gill sperlein
the law office of d. gill sperlein

4.   An agent of an entertainer or a performer who is compensated solely for negotiating his or her client's contract to perform at an event;

5.   Any person permitted or licensed under Chapter 6.58 or Chapter 6.60 of this Code that engages in event promoter activities for events that the person's permit or license authorizes;

6.   An employee of any person permitted under Chapter 6.58 of this Code who, in the course of his or her employment, promotes events that are authorized under the permit issued to his or her employer;

7.   An employee of any person permitted or licensed under Chapter 6.60 of this Code who, in the course of his or her employment, promotes events that are authorized under the permit or license issued to his or her employer;

8.   An employee of any person permitted under this chapter who, in the course of his or her employment, promotes events that are authorized under the permit issued to his or her employer; or

9.   An agent, officer, or employee of the City of San José who engages in event promoter activities exclusively for the City of San José in the course of his position as an agent, officer or employee.

49.   The Event Promoter Chapter §6.62.400 provides that, "[t]he procedures set forth in Chapter 6.02 for permits and licenses shall govern the application for and investigation, approval, denial, suspension and revocation of, any permit required by this chapter, except as specifically provided in this part."

50.   Chapter 6.02 sets the time for acting on an application for a license or permit as follows, "[t]he department head shall make a determination to approve or deny the permit or license within a reasonable period of time after the applicant has submitted a completed application." SJMC §6.02.110.

### FIRST CAUSE OF ACTION
### 42 U.S.C. §1983
### Violation of the 1st Amendment of the
### United States Constitution overbreadth, vagueness, prior restraint

51.   Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

d. gill sperlein
the law office of d. gill sperlein

52.     In order present live entertainment to the public, SJ Live must comply with the provisions of SJMC Chapter 6.60 Entertainment Permits and Chapter 6.62 Event Promoters, including those provisions set forth above.

53.     The provisions of those chapters are directed at speech and expressive conduct.  Because a license is required to engage in protected expressive activity, the entertainment code serves as a prior restraint and is therefore presumed unconstitutional.  To overcome this presumption, the provisions must advance a compelling governmental interest and must be narrowly tailored.

54.     The provisions of those chapters are unconstitutional on their face and as applied to Plaintiff under the First Amendment to the United States Constitution for numerous and various reasons, including, but not limited to, the following:

    a. The code provisions effectuate an impermissible prior restraint on speech and expression;

    b. The code provisions unduly, impermissibly, and unconstitutionally restrict the ability of live entertainers from engaging in First Amendment activities;

    c. The code provisions permit unbridled discretion by the permitting authority (the San José Police Department) and administrators in determining what speech to sanction;

    d. The code provisions deny Plaintiff and others their procedural due process rights under the First Amendments;

    e. The code provisions fail to further any important, substantial, or compelling governmental interest;

    f. The code provisions permit restrictions on speech and expression that are greater than are essential to further any asserted governmental interests;

d. gill sperlein
the law office of d. gill sperlein

g. The code provisions allow restrictions on speech and expression that are not the least restrictive means available;

h. The code provisions contain criteria that are both arbitrary and capricious and which are not supported by any legislative or administrative record;

i. The code provisions contain various terms and phrases that are impermissibly vague and ambiguous;

j. The code provisions contain various terms which are impermissibly and substantially overbroad judged in relation to its plainly legitimate sweep;

55.    The code provisions act as a prior restraint on SJ Live and others who desire to present expressive conduct and speech through live entertainment in the City of San José.

56.    Plaintiff intends to apply for entertainment permits in the future and to apply to renew its existing entertainment permit within the coming year.

57.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. §2201, Plaintiff is entitled to a declaration that the code provisions are unconstitutional on their face and as applied to Plaintiff for the reasons set forth above.

**SECOND CAUSE OF ACTION**
**42 U.S.C. §1983**
**(Violation of Due Process under the 5th and 14th**
**Amendments of the United States Constitution)**

58.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

59.    In order present live entertainment to the public, SJ Live must comply with the provisions of SJMC Chapter 6.60 Entertainment Permits and Chapter 6.62 Event Promoters, including those provisions set forth above.

- 14 –

60.     Those Code Chapters, include definitions that are so broad that they constitute a Due Process violation under the Fifth and Fourteenth Amendments to the U.S. Constitution in that they are impermissibly vague to give adequate guidance to those individuals who would be law–abiding, to advise them of the nature of potential offenses.

61.     Those Code Chapters, include definitions that are so broad that they constitute a Due Process violation under the Fifth and Fourteenth Amendments to the U.S. Constitution in that they confer arbitrary power to the San José  Police to determine what actions constitute a violation and what sanctions should be associated.

62.     The provisions of those chapters are unconstitutional on their face and as applied to Plaintiff under the Fifth and Fourteenth Amendments to the United States Constitution for numerous and various reasons, including, but not limited to, the following:

a. The code provisions permit unbridled discretion by the permitting authority (the San José Police Department) and administrators in determining what speech to sanction;

b. The code provisions deny Plaintiff and others their procedural due process rights under the Fifth and Fourteenth Amendments;

c. The code provisions fail to further any important, substantial, or compelling governmental interest;

d. The code provisions permit restrictions on speech and expression that are greater than are essential to further any asserted governmental interests;

e. The code provisions allow restrictions on speech and expression that are not the least restrictive means available;

- 15 –

d. gill sperlein
the law office of d. gill sperlein

f.  The code provisions contain criteria that are both arbitrary and capricious and which are not supported by any legislative or administrative record;

g.  The code provisions contain various terms and phrases that are impermissibly vague and ambiguous;

h.  The code provisions contain various terms which are impermissibly and substantially overbroad judged in relation to its plainly legitimate sweep;

63.  Plaintiff intends to apply for entertainment permits in the future and to apply to renew its existing entertainment permit within the coming year.

64.  Pursuant to Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. §2201, Plaintiff is entitled to a declaration that the code provisions are unconstitutional on their face and as applied to Plaintiff for the reasons set forth above.

### THIRD CAUSE OF ACTION
### 42 U.S.C. §1983
### (Violation of Due Process under the 5th and 14th
### Amendments of the United States Constitution – denial of a fair hearing)

65.  Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this First Amended Complaint.

66.  For the reasons stated herein, Plaintiff was denied a fair hearing in violation of the due process clauses of the Fifth and Fourteenth Amendments.

67.  The procedures governing administrative hearings for the revocation of an entertainment permit do not permit discovery.  Although Plaintiff tried to overcome this hurdle by making public records requests, Defendant resisted those efforts and did not produce much of what was requested.

68.  In the revocation hearing, Defendant relied on statements from witnesses to the shooting but refused to identify the names of those witnesses to SJ

Live.   Plaintiff had no opportunity to challenge the testimony through cross examination.   Since the witnesses were unidentified, Plaintiff could not even investigate on its own to determine if the witnesses were biased or otherwise unreliable.

69.    Defendant justified the withholding of evidence by stating that there was an open investigation into the shooting.   This concern could have been alleviated by first pursuing the criminal charges against Embay and if convicted then turn to the enforcement of the entertainment code against Plaintiff, however ill advised.

70.    In the revocation hearing, Defendant relied on video evidence from the night in question, but refused to allow SJ Live or its counsel to review the video prior to the hearing or at the hearing. Some of the video in question was obtained from SJ Live before SJ Live learned it was the subject of an entertainment permit revocation investigation.   Nonetheless, Defendant refused to provide copies of the video to SJ Live or its counsel.

71.    Instead of presenting the video at the hearing, Defendant presented police offers to testify as to what appeared on the videos.   Even though one of the officers, Lt. Trayer, admitted that he had only reviewed small portions of the video briefly months before the hearing.

72.    The investigation regarding Plaintiff was conducted by the San José Police Department.   The Deputy Chief of Police served as the hearing officer. Accordingly, the hearing officer was tasked with reviewing a revocation decision issued by his direct supervisor, the Chief of Police.  Moreover, Deputy Chief Bustillos was evaluating hearsay evidence presented by his subordinates, even though direct evidence in the form of eye-witness testimony and videotape was available, but was withheld by the Defendant.

73.     San José 's City Attorney represented the City of San José  throughout the revocation proceedings.  At the administrative hearing, a senior attorney in the City Attorney's Office advised Deputy Chief Bustillos.  At the Appeal Hearing Board, t an attorney from the City Attorney's Office also advised the Board.

74.     The  Police  Chief  issued  the  Notice  of  Intention  to  Revoke  Plaintiff's entertainment permit.  At the administrative hearing, Deputy Chief Bustillos reviewed a  decision  made  by  his  direct  superior.   During  the  hearing,  the  Deputy  Chief explained  that  the  police  department  is  "a  paramilitary  organization,  and  when  the Chief tells you to do something, you do it unless it's illegal or morally reprehensible." This structure created significant pressure for the Deputy Chief to reaffirm at least in part the decision of his superior.  It would be particularly difficult for a police officer, who  does  not  routinely  act  in  as  an  adjudicator.   This  bias  could  have  been eliminated by referring the matter to a neutral third party such as a retired judge.

75.     A day prior to the hearing, counsel for the hearing officer demonstrated her  own  hostility  and  refused  to  respond  to  reasonable  questions  as  to  whether there  would  be  opening  and  closing  statements,  what  party  would  present evidence first, etc.

76.     Demonstrating  a  level  of  uncomfortableness  with  the  adjudicatory setting, the hearing officer questioned the presence of the court reporter saying that she was only permitted to be there for Plaintiff's convenience.

77.     The City failed to disclose to Plaintiff that it had specific interest in the building in which Plaintiff operates SJ Live.

78.     City  officials,  including  Mayor  Sam  Liccardo  and  Councilman  Raul Peralez,  have  been  actively  assisting  the  redevelopment  of  the  Bank  of  Italy Building.

79.     Plaintiff is informed and believes and based thereon alleges that the City has provided tax incentives to assist in the redevelopment of the building and

the surrounding area.  Thus, the City had an incentive to oust Plaintiff from the building so that the redevelopment efforts could commence.

80.    The City was heavily invested in the redevelopment of the property, which would benefit from the ouster of SJ Live.  The City should have alerted Plaintiff to this conflict and the hearing should have been heard by an independent and neutral decision maker.

81.    To advance its plan to remove Plaintiff as an obstacle to redevelopment of the building, Defendant selectively enforced the permitting laws and over-zealously prosecuted the Plaintiff.  Although there are multiple examples of far more egregious action on the part of entertainment permit holders the City of San José has never before sought to revoke an entertainment permit.

82.    For the reasons set forth above, Defendant denied Plaintiff a fair hearing, in violation of constitutional due process requirements.

### FOURTH CAUSE OF ACTION
**(Interference with Free Speech and Due Process Rights Secured
by Article 1, §§1and 2 of the Constitution of the State of California)**

83.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this First Amended Complaint.

84.    In order present live entertainment to the public, SJ Live must comply with the provisions of SJMC Chapter 6.60 Entertainment Permits and Chapter 6.62 Event Promoters, including those provisions set forth above.

85.    The Code provisions are unconstitutional on their face and as applied to Plaintiff under Article 1, §2 of the Constitution of the State of California for numerous and various reasons, including, but not limited to, the following:

a. The code provisions effectuate an impermissible prior restraint on speech and expression;

b. The code provisions unduly, impermissibly, and unconstitutionally restrict the ability of students from engaging in First Amendment activities;

c. The code provisions permit unbridled discretion by the permitting authority (the San José Police Department) and administrators in determining what speech to sanction;

d. The code provisions deny Plaintiff and others their procedural due process rights under the First and Fourteenth Amendments;

e. The code provisions fail to further any important, substantial, or compelling governmental interest;

f. The code provisions permit restrictions on speech and expression that are greater than are essential to further any asserted governmental interests;

g. The code provisions allow restrictions on speech and expression that are not the least restrictive means available;

h. The code provisions contain criteria that are both arbitrary and capricious and which are not supported by any legislative or administrative record;

i. The code provisions contain various terms and phrases that are impermissibly vague and ambiguous;

j. The code provisions contain various terms which are impermissibly and substantially overbroad judged in relation to its plainly legitimate sweep;

86.     The code provisions act as a prior restraint on SJ Live and others who desire to present expressive conduct and speech through live entertainment in the City of San José.

**FIFTH CAUSE OF ACTION**
**(As Applied Partial Taking Claim under the Fifth Amendment to the U.S. Constitution.)**

87.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this First Amended Complaint.

88.   Defendant attempted to reduce the value of Plaintiff's lease and force her out of the building specifically because they believed it would accelerate the redevelopment of the building and spur revitalization of the surrounding area.

89.   The revitalization of the area surrounding the Bank of Italy Building is a public benefit which in all fairness and justice, should be borne by the public as a whole.

90.   Defendant's actions as described above reduced the value of the Plaintiff's business.  The extent of this devaluation when far beyond the thirty-day suspension.  During the time in which Plaintiff asserted its rights, it was forced to operate in limbo, since it did not know if or when it might lose its entertainment permit.  Accordingly, Plaintiff could not make any future bookings.  The club lost momentum and became out of fashion – a critical factor for a night club.

91.   To overcome the damage caused by the Defendant's actions, Plaintiff would have to spend hundreds of thousands of dollars to rebrand, remarket, and relaunch the club.

92.   Defendant did not compensate Plaintiff for the reduced value of its business.

93.   The above described action constitutes a taking without just compensation in violation of the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment for Plaintiff and against Defendant as follows:

A.   An order declaring that provisions within Chapter 6.60 and Chapter 6.62 of the San José Municipal Code are unconstitutional on their face

- 21 –

d. gill sperlein
the law office of d. gill sperlein

under the Free Speech Clause of the First Amendment of United States Constitution;

B.  An order declaring that provisions within Chapter 6.60 and Chapter 6.62 of the San José Municipal Code are unconstitutional on their face under the Due Process Clauses of the Fifth and Fourteenth Amendments of United States Constitution;

C.  An order declaring that the provisions within Chapter 6.60 and Chapter 6.62 of the San José Municipal Code are unconstitutional on their face under the California Constitution, Article 1, §§ 1 and 2;

D.  An order temporarily, preliminarily, and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction from enforcing the suspension of Plaintiff's Entertainment Permit;

E.  An order temporarily, preliminarily, and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction from enforcing provisions within Chapter 6.60 and Chapter 6.62 of the San José Municipal Code;

F.  Costs of suit, including attorneys' fees and costs pursuant to 42 U.S.C. §1988;

G.  Such other declaratory relief consistent with the injunction as appropriate; and

H.  All other relief to which Plaintiff may be entitled.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

Dated: June 20, 2018                         THE LAW OFFICE OF D. GILL SPERLEIN

                                            By:    _/s/ D. Gill Sperlein_
                                                   D. GILL SPERLEIN

                                                   Attorneys for Plaintiff,
                                                   Diamond SJ Enterprise, Inc.

18-CV-01353-LK
FIRST AMENDED COMPLAINT