UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIAMOND S.J. ENTERPRISE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF SAN JOSE, <br><br> Defendant. | Case No. 18-CV-01353-LHK <br><br> **ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE** <br><br> Re: Dkt. No. 55 |

Plaintiff Diamond S.J. Enterprise, Inc. brings suit against Defendant the City of San Jose ("San Jose" or "City"). Plaintiff owns and operates a nightclub called SJ Live in San Jose, California. The City issued notice to Plaintiff revoking Plaintiff's entertainment permit to operate as a nightclub. After attempts to appeal the permit's revocation through administrative proceedings held by the City, Plaintiff brought suit here. Before the Court is the City's motion to dismiss and/or to strike. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss, and GRANTS in part and DENIES in part Defendant's motion to strike.

I.      **BACKGROUND**

## A. Factual Background

Plaintiff owns and operates a nightclub called SJ Live. ECF No. 54 at ¶ 11 (second amended complaint, or "SAC."). On May 28, 2017, SJ Live was approached by Daniel Embay. *Id.* at ¶ 32. Embay had booked a performer named Lucci. *Id.* at ¶ 32. Originally, Lucci was supposed to perform at a club in San Francisco, but the club cancelled. *Id.* So, Embay approached SJ Live to see whether SJ Live could host Lucci. *Id.* SJ Live agreed to book Lucci for $10,000. *Id.* "Lucci would pay any booking agent fees to Mr. Embay directly." *Id.* The Plaintiff claims that Embay usually "holds himself out as an event promoter," though that was not the role he purportedly played in relation to the Lucci booking. *Id.* at ¶ 34. Plaintiff claims Embay was merely a booking agent, not an event promoter, because operating as an event promoter in San Jose requires a permit, whereas there is an exception to the permitting requirement for an "agent of an entertainer or performer who is compensated solely for negotiating his or her client's contract to perform at an event." *Id.* (citing San Jose Municipal Code ("SJMC") § 6.62.040(B)(4)).

Plaintiff has a dress code and provides table bottle service. *Id.* at ¶ 35. The bottle service is booked prior to an event through the club's owner and manager, Jenny Wolfes. *Id.* at ¶ 26, 35. Before the Lucci event, Embay had a disagreement with Wolfes over whether sneakers should be allowed. *Id.* at ¶ 36. In the past, the club's dress code did not allow for sneakers, and Wolfes did not make an exception for the Lucci event. *Id.* Once guests began to arrive, some guests stated that they had booked table bottle service. *Id.* at ¶ 37. Embay admitted that he went around the club's usual protocol of the manager taking reservations for table bottle service. *Id.* Instead, Embay sold tickets and table service on eventbright.com without the approval of anyone at SJ Live. *Id.* Because Wolfes was concerned that there would be double-bookings which would create conflict, she cancelled the Lucci event and closed SJ Live's doors, though she allowed about 150 guests who had already entered the club to stay until the club's regular closing time. *Id.* at ¶¶ 37-38. Wolfes also told Embay to leave. *Id.* at ¶ 37. Once the club doors were closed, security dispersed the crowd of people trying to enter the club within 15 to 20 minutes. *Id.* at ¶ 38. At 1:38 a.m. on the night of the Lucci event, gunshots were fired in a shared parking lot behind SJ Live. *Id.* at ¶

2

39. There were no injuries. *Id.* Embay turned out to be a suspect in the shooting, so Wolfes provided Lieutenant Trayer of San Jose Special Investigations Vice Unit with security camera footage to assist in the criminal investigation. *Id.* at ¶¶ 37, 39. A few weeks after the Lucci incident, on July 17, 2017,[1] San Jose's chief of police Edgardo Garcia issued a Notice of Intended Action informing Plaintiff that the City intended to revoke SJ Live's entertainment permit. *Id.* at ¶ 13.

The Notice of Intended Action was based on the following alleged violations: (1) "using an unlicensed promoter (violation of SJMC § 6.62.200)"[2]; (2) "leaving a significant group of patrons on the peripheral of the business exterior (violation of SJMC § 6.60.240 F))"; (3) "failing to have security in or near the adjacent parking lot at the time of the shooting (violation of SJMC§ 6.60.240 (C))"; (4) "[n]ot maintaining a valid conditional use permit (violation of SJMC § 6.60.200)"; (5) "[o]perating the business in such a way that it constitutes a public nuisance . . . (violation of SJMC § 6.60.290)"; (6) "[c]reating a public nuisance by maintaining or using the property in a manner that jeopardizes or endangers health, safety, or welfare of persons on the premises or in the surrounding areas . . . (violation of SJMC § 1.13.050)"; and "[o]perating a disorderly house (violation of Cal. Bus. [a]nd Prof. Code § 25601)". *Id.* at ¶ 13.

Plaintiff believes that the attempt to revoke SJ Live's entertainment permit was politically motivated. As evidence of this political motivation, it is alleged that SJ Live's owner/manager Jenny Wolfes' other attempts at opening other ventures in San Jose, such as a bar, were repeatedly subject to the San Jose City Council's interference. *Id.* at ¶¶ 27-28. Furthermore, SJ Live is in the

---

[1] The SAC states that the Notice of Intended Action was issued on July 17, 2018, but in the context of other allegations, the Court believes the year is a typographic error. *See* SAC at ¶ 42 ("On July 17, 2017, [t]he Chief of Police issued a Notice of Intended Action indicating the City of San Jose intended to revoke Diamond SJ Enterprise's entertainment permit.")

[2] Though Plaintiff cites SJMC § 6.62.200 as the provision prohibiting the use of an unlicensed promoter, SAC at ¶ 13, the Court believes this is a typographic error because the SAC later cites SJMC § 6.62.040 as the applicable provision of the SJMC violated by hiring an unlicensed promoter, *id.* at ¶ 15 ("Appellant violated the San Jose Municipal Code by hiring an unlicensed promoter (violation of SJMC §6.62.040)." Moreover, in the "Challenged Ordinances" section of Plaintiff's SAC, Plaintiff makes no mention of SJMC § 6.62.200. Rather, Plaintiff alleges that SJMC § 6.62.040 is unconstitutional. *Id.* at ¶ 23.

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

San Jose Bank of Italy Building, which investors were able to purchase in its entirety subject to SJ Live's lease. *Id.* at ¶ 29. Plaintiff claims that city officials "specifically targeted SJ Live with the most severe sanctions available[, revocation of SJ Live's entertainment permit,] in order to clear the way for the redevelopment of the Bank of Italy Building." *Id.* at ¶ 31. Plaintiff believes that proposed revocation of the entertainment permit was disproportionate because "other permitted entertainment businesses had far worse violations in recent years, [and] the actions taken by the Police Department against those businesses were far less severe." *Id.* at ¶ 44.

**B. Procedural History**

After the July 17, 2017 notice of the intended revocation of SJ Live's entertainment permit effective July 28, 2017, SJ Live requested an administrative hearing to review Defendant's intended revocation of SJ Live's entertainment permit. *Id.* at ¶ 15. On October 11, 2017, an administrative hearing was held before deputy chief of police Mark Bustillos. *Id.* On November 17, 2017, Bustillos issued a "Notice of and Decision on Intended Action to Revoke Entertainment Permit, in which the City announced its decision to suspend SJ Live's entertainment permit for thirty days" as opposed to completely revoking the entertainment permit. *Id.* Bustillos found that Plaintiff violated the SJMC by: (1) hiring an unlicensed promoter for whom Plaintiff was responsible for, and creating or resulting in a public nuisance. *Id.*

SJ Live then appealed the suspension to the Appeal Hearings Board, which held a hearing on February 8, 2018. *Id.* at ¶ 16. In its written decision mailed on February 26, 2018, the Board rejected the administrative hearing's finding regarding the hiring of an unlicensed promoter, but upheld the public nuisance charge. *Id.* at ¶ 17. Thus, the Board upheld the suspension of SJ Live's entertainment permit for 30 days. *Id.*

On March 1, 2018, Plaintiff brought suit in this Court against Plaintiff. ECF No. 1. The complaint was accompanied by an *ex parte* motion for a temporary restraining order. ECF No. 2. The temporary restraining order was denied without prejudice on March 1, 2018.

On March 2, 2018, Plaintiff filed an amended motion for a temporary restraining order.

ECF No. 15. That same day, the Court directed the Plaintiff to serve Defendant, and ordered Defendant to respond. ECF No. 18. Defendant filed a response on March 2, 2018. ECF No. 20. On March 2, 2018, the amended motion for a temporary restraining order was denied. ECF No. 22.

On March 12, 2018, Plaintiff filed a Writ of Administrative Mandamus in the Superior Court of Santa Clara County. ECF No. 37-1, Ex. C at i. On April 24, 2018, the Superior Court ruled that the administrative decision to suspend Plaintiff's entertainment permit was supported by substantial evidence. ECF No. 56, Ex. D at 2-3.

On April 6, 2018, Defendant answered Plaintiff's federal complaint in the instant case, but Plaintiff filed a first amended complaint ("FAC") on June 20, 2018. The City filed its motion to dismiss and/or strike the FAC on July 20, 2018. ECF No. 37.

In the FAC, the Plaintiff alleged 5 causes of action, FAC at ¶¶ 51-93: (1) violation of the First Amendment under 42 U.S.C. § 1983, *id.* at 12; (2) violation of due process under the Fifth Amendment under 42 U.S.C. § 1983, *id.* at 14; (3) denial of a fair hearing in violation of the Fourteenth Amendment under 42 U.S.C. § 1983, *id.* at 16; (4) interference with free speech and due process secured by Article 1, § 2 of the California Constitution, *id.* at 19; and (5) a partial taking under the Fifth Amendment, *id.* at 21.

On October 29, 2018, the Court filed an Order Granting-in-Part and Denying-in-Part as Moot Defendant's Motion to Dismiss, and Granting Defendant's Motion to Strike. ECF No. 51 (the "October 29, 2018 Order"). The October 29, 2018 Order dismissed the FAC's first claim— violation of the First Amendment—because "Plaintiff never allege[d] which subparts of the San Jose Municipal Code violate the First Amendment, only that entire chapters of the San Jose Municipal Code violate the First Amendment." *Id.* at 10. The Order struck Plaintiff's second cause of action—violation of due process under the Fifth Amendment—because the Fifth Amendment's due process clause only applies to the federal government, and all "allegations in the FAC are against municipal actors." *Id.* at 8. The Order dismissed Plaintiff's third cause of action—denial of a fair hearing in violation of the Fourteenth Amendment—because Plaintiff failed to specify which

United States District Court
Northern District of California

SJMC code provisions allegedly violated the Fourteenth Amendment, and "the hundred or so code provisions under each San Jose Municipal Code chapter that allegedly violate the Constitution creates an insurmountable burden on the City to respond." *Id.* at 11. Likewise, the Order dismissed Plaintiff's fourth cause of action—interference with free speech and due process secured by Article 1, § 2 of the California Constitution—because the Plaintiff failed to identify with particularity which portions of the SJMC allegedly violated the California Constitution. *Id.* at 12. Finally, the Order denied Defendant's motion to dismiss as moot for Plaintiff's fifth cause of action—a partial taking under the Fifth Amendment—because Plaintiff withdrew the partial takings claim in Plaintiff's opposition brief. *Id.* at 13.

In its October 29, 2018 Order, the Court gave Plaintiff 30 days to amend the first amended complaint, and warned Plaintiff that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.*

On November 28, 2018, Plaintiff filed a second amended complaint. ECF No. 52 (second amended complaint, or "SAC"). On December 12, 2018, Defendant filed the instant motion to dismiss, for judgment on the pleadings, and/or to strike the SAC. ECF No. 55 ("Mot."). On January 8, 2019, Plaintiff filed its opposition. ECF No. 60 ("Opp."). On January 18, 2019, Defendant filed a reply. ECF No. 61 ("Reply").

On April 9, 2019, the Court ordered additional briefing on "whether the challenged ordinances and laws in Plaintiff's first cause of action in the second amended compliant implicate the First Amendment and whether the challenged ordinances and laws constitute a prior restraint on speech." ECF No. 68. On April 22, 2019, both parties filed additional briefing in accordance with the Court's Order. ECF Nos. 71 (Defendant's supplemental brief, or "Def. Supp. Br."), 72 (Plaintiff's supplemental brief, or "Pl. Supp. Br.").

## II.      LEGAL STANDARD

### A. Motion to Strike under Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### B. Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); see also *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead

United States District Court
Northern District of California

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### C. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### D. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### E. Judicial Notice

Defendant requests judicial notice of 4 exhibits: (1) the Notice of Intended Action to Revoke Entertainment Permit; (2) Notice and Decision on Intended Action to Revoke Entertainment Permit; (3) the City of San Jose Appeals Hearing Board's resolution upholding the suspension of Diamond SJ's public entertainment permit; and (4) the Santa Clara County Superior Court's ruling on a Writ of Administrative Mandamus in *Diamond S.J. Enterprises, Inc. v. City of San Jose* (Santa Clara County Superior Court Case No. 18-CV-324818). The Court may take judicial notice of matters that are either "generally known within the trial court's territorial

United States District Court
Northern District of California

United States District Court
Northern District of California

jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Defendant's 4 exhibits constitute public records and are therefore judicially noticeable. Thus, the Court GRANTS Defendant's request for judicial notice.

## III. DISCUSSION

In the SAC, Plaintiff asserts 4 causes of action. First, Plaintiff alleges facial and as-applied violations of the First Amendment for overbreadth, vagueness, and prior restraint relating to certain provisions of the SJMC. SAC at ¶¶ 52-66. Second, Plaintiff alleges facial and as-applied violations of due process under the Fourteenth Amendment relating to certain provisions of the SJMC being too vague. *Id.* at ¶¶ 67-73. Third, Plaintiff alleges an as-applied violation of due process under the Fourteenth Amendment for San Jose's alleged failure to provide Plaintiff with a fair hearing. *Id.* at ¶¶ 74-91. Fourth, Plaintiff alleges facial and as-applied challenges to various SJMC provisions that supposedly contravene Article 1, §§ 2 and 7 of the California Constitution that guarantee free speech and due process rights. The Court addresses each cause of action in turn.

### A. First Cause of Action: Violation of the First Amendment under 42 U.S.C. § 1983

In its October 29, 2018 Order, the Court dismissed Plaintiff's allegations of a violation of the First Amendment under § 1983 with leave to amend. ECF No. 51 at 13. Plaintiff has now filed a SAC, reasserting the First Amendment claims against Defendant. After reviewing the SAC, the Court agrees with Defendant that Plaintiff's third attempt at stating a First Amendment prior restraint claim fails.

The Court's October 29, 2018 Order held that Plaintiff's First Amendment § 1983 claim failed to identify the specific SJMC provisions at issue and thus failed to state a claim for relief under Rule 8. ECF No. 51 at 10. The Court warned that "failure to cure the deficiencies . . . will result in dismissal with prejudice of the claims." *Id.* at 13.

10

Here, Plaintiff alleges that various portions of the SJMC violate the First Amendment because of vagueness, overbreadth, and impermissible prior restraint. Specifically, Defendant moves to dismiss SJMC §§ 6.62.040, 6.62.360(B), 6.60.290, 6.60.370(L), 6.60.383(F), and 6.60.240, and moves to strike the SAC's allegations at paragraphs 55 and 63. Defendant, however, has chosen only to challenge Plaintiff's prior restraint theory by claiming that "Plaintiff's allegations regarding purported prior restraint are minimal and conclusory." Mot. at 11. Thus, Plaintiff's constitutional challenges under the theories of vagueness and overbreadth are not addressed in this order. Mot. at 11; Reply at 1. The Court ultimately concludes that each of the challenged portions of the SJMC are not prior restraints and also that the SAC's allegations with regard to the challenged portions of the SJMC are conclusory, and thus do not meet Rule 8's pleading standard. Below, the Court will address each of the challenged subsections of the SJMC and the motion to strike certain SAC allegations in turn.

**1. SJMC § 6.62.040**

SJMC § 6.62.040 defines "event promoter" as any person who:

> 1. Is directly or indirectly responsible for the promotion of an event as evidenced by activities such as, but not limited to contracting with the principals, selecting entertainment, advertising or otherwise holding out the event to members of the general public, inviting participants to the event, renting or controlling the event site, or serving as a designated on-side representative while the event is occurring as provided in Section 6.62.350 of this chapter; and
>
> 2. In exchange for engaging in the promotion of the event, as described in Section 6.62.040A.1., directly or indirectly receives or shares in any of the following:
>
> a. Admission or entrance fees paid by participants or spectators;
>
> b. Compensation, consideration or other revenue from sponsors, private donors or managers and/or owners of the event site; or
>
> c. Revenues from concessions or other sales at the event.

SJMC § 6.62.040 also defines who is *not* considered an event promoter. The Court finds that under various precedents defining prior restraint, SJMC § 6.62.040 is not a prior restraint on protected First Amendment activity. Moreover, the Court finds that Plaintiff's allegations that

11

1   SJMC § 6.62.040 are prior restraints do not meet the pleading standard set forth in Rule 8 and in

2   *Iqbal*.

3           a.   SJMC § 6.62.040 is not a Prior Restraint

4           The United States Supreme Court has defined prior restraint to be "administrative and

5   judicial orders *forbidding* certain communications when issued in advance of the time that such

6   communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in

7   original) (internal quotation marks omitted). Indeed, "not every governmental action that may

8   affect future protected expression is . . . [a] prior restraint." *Set Enterps, Inc. v. City of Hallandale*

9   *Beach*, 2010 WL 11549707, at *12 (S.D. Fla. Dec. 30, 2010).

10          In *Alexander*, the defendant was an owner of an adult entertainment business convicted of

11  obscenity charges and violations of the Racketeer Influenced and Corrupt Organizations Act

12  ("RICO"). *Id.* at 546-47. Part of the defendant's sentence imposed by the district court involved

13  forfeiting various assets, which put the defendant out of business. *Id.* at 546, 548-49. The

14  defendant argued that the district court's sentence constituted a prior restraint because it

15  "prohibit[ed] future presumptively protected expression in retaliation for prior unprotected

16  speech." *Id.* at 549. The United States Supreme Court in *Alexander* rejected the defendant's prior

17  restraint argument, and emphasized that the district court's punishment did not "*forbid* petitioner

18  from engaging in any expressive activities in the future," nor did it "require [petitioner] to obtain

19  prior approval for any expressive activities." *Id.* at 550-51. In fact, the *Alexander* court noted that

20  "petitioner can go back into the adult entertainment business tomorrow, and sell as many sexually

21  explicit magazines and videotapes as he likes, without any risk of being held in contempt for

22  violating a court order." *Id.* at 551.

23          Another United States Supreme Court decision that informs whether there was any

24  impermissible prior restraint involved an undercover officer who witnessed sexual acts and

25  prostitution solicitations at an adult bookstore, which took place within view of the bookstore

26  owners. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 698-99 (1986). County officials, relying on

27

28
    Case No. 18-CV-01353-LHK
    ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION
    TO STRIKE

public nuisance ordinances that permitted the closure of properties used for lewdness or prostitution, sought to close the bookstore. *Id.* at 699-700. The bookstore owners claimed that closing the store would "impermissibly interfere with their First Amendment right to sell books on the premises." *Id.* at 700. The *Arcara* court rejected the bookstore owners' arguments that closure of the bookstore would be a prior restraint. The *Arcara* court explained:

> The closure order sought in this case differs from a prior restraint in two significant respects. First, the order would impose no restraint at all on the dissemination of particular materials, since respondents are free to carry on their bookselling business at another location, even if such locations are difficult to find. Second, the closure order sought would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with any expressive conduct at all.

*Id.* at 705 n.2. Basically, the *Arcara* court did not find that closure of the bookstore would constitute a prior restraint because the bookstore owners could continue to sell books elsewhere, and the imposition of the closure order failed to implicate any expressive conduct.

Thus, United States Supreme Court precedent confirms that in order for a law to be a prior restraint of speech, the law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988).

Here, SJMC § 6.62.040 is not a prior restraint on speech because it does not fall within the United States Supreme Court's definition of prior restraint. SJMC § 6.62.040 is simply an ordinance stating the definitions of "event promoter." Like in *Alexander*, SJMC § 6.62.040's definition of "event promoter" neither forbids anyone "from engaging in any expressive activities in the future," nor requires anyone "to obtain prior approval for any expressive activities" because SJMC § 6.62.040 does not seek to regulate an event promoter's activities based on the content or type of the event being promoted. 509 U.S. at 550-51. Also, like in *Arcara*, where a closure order closing a bookstore was determined not to be a prior restraint because the closure order imposed no restraints on how the bookstore owners could continue to sell books elsewhere, here, SJMC §

6.62.040 imposes no restraints on what type of activity an event promoter can or cannot promote. Moreover, as *City of Lakewood* held, there are no "censorship risks" in defining an event promoter because SJMC § 6.62.040 does not seek to regulate the content of events arranged by an event promoter. 486 U.S. at 759.

Similarly, the Ninth Circuit considered the constitutionality of California's licensing laws that define "psychologist" and "psychoanalyst." *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. Of Psychology*, 228 F.3d 1043, 1047 (9th Cir. 2000). The *Advancement of Psychoanalysis* court determined that "the psychology licensing laws are not a prior restraint on speech" because "the licensing scheme neither utilizes a suspect classification nor implicates a fundamental right." *Id.* at 1050, 1056. Moreover, that "psychoanalysts employ speech to treat their clients does not entitle them, or their profession, to special First Amendment protection." *Id.* at 1054. Here, the event promoter licensing definitions are akin to California's licensing laws that define psychologist and psychoanalyst because both are "within the state's police power to regulate and license professions." *Id.* At bottom, the *Advancement of Psychoanalysis* court's decision demonstrates that simply because there is a licensing requirement as a prerequisite to exercising speech-related activities, this licensing requirement is not automatically a prior restraint on speech. In fact, in the instant case, the San Jose Appeal Hearings Board dismissed the charge that Plaintiff violated the prohibition on using an event promoter without an event promoter permit. SAC at ¶ 17.

Moreover, in *Microsoft Corp. v. United States Dep't of Justice*, the court considered whether 18 U.S.C. § 2705(b), part of the Stored Communications Act ("SCA"), was constitutional. 233 F. Supp. 3d 887, 895 (W.D. Wash. 2017). The SCA is a statute that regulates "relations between a government entity which seeks [electronic] information; a service provider which holds information; and the subscriber of the service who owns the information and is therefore a target of investigation." *Id.* at 894. "Section 2703 of the SCA authorizes the government to acquire a subscriber's information from a service provider when the subscriber is a 'target' of the

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

United States District Court
Northern District of California

government's information request." *Id.* at 895. However, 18 U.S.C. § 2705(b) allows the government to seek indefinite nondisclosure orders from courts "to prevent [plaintiff] Microsoft from telling its customers (or anyone else) of the government's demands for that information." *Id.* at 896. Microsoft contended that § 2705(b) violated the First Amendment because § 2705(b) impinges on the "First Amendment right of a business to talk to [the business'] customers and to discuss how the government conducts its investigations." *Id.* at 897. However, the *Microsoft* court held that "the indefinite nondisclosure orders that Section 2705(b) allows are not administrative prior restraints imposed by a licensing scheme because Section 2705(b) itself does not impose the prior restraint; rather, the statute allows a court to issue an order imposing a prior restraint on speech." *Id.* at 906. Thus, the *Microsoft* court distinguished between the law allowing a court to impose a prior restraint and the prior restraint itself. Here, SJMC § 6.62.040 is an even clearer example that SJMC § 6.62.040 is not a prior restraint than the situation in *Microsoft*. SJMC § 6.62.040 does not allow for San Jose or a court to impose a prior restraint, unlike 18 U.S.C. § 2705(b) in *Microsoft*, which allowed a court to enter an indefinite nondisclosure order. Rather, SJMC § 6.62.040 defines event promoter and allows San Jose to impose sanctions for those who hire an unlicensed promoter. SAC at ¶ 15. There are no allegations that San Jose authorities cited Plaintiff for a violation of SJMC § 6.62.040 to impose a prior restraint of speech, especially because the San Jose Appeal Hearings Board ultimately rejected the charge that Plaintiff violated the prohibition on using an event promoter without a permit. *Id.* at ¶ 17.

Plaintiff argues that the Ninth Circuit has recognized the First Amendment rights of concert promoters. Pl. Supp. Br. at 2 (citing *Cinevision Corp. v. Burbank*, 745 F.2d 560, 567 (9th Cir. 1984)). Indeed, the Ninth Circuit in *Cinevision* held that "[a]s a promoter of protected musical expression, Cinevision enjoys [F]irst [A]mendment rights." *Cinevision*, 745 F.2d at 568. However, in the instant case, the existence of a First Amendment right for event promoters is not in doubt. The *Cinevision* court's decision is inapposite because the *Cinevision* court was never tasked with identifying whether an ordinance *defining* event promoters was a prior restraint on speech, so

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cinevision* has no bearing on the instant case.

           b.   Plaintiff Fails to State a Claim that SJMC § 6.62.040 is a Prior Restraint

      "Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet Rule 8's requirement that "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. Moreover, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Here, in allegations relating to SJMC § 6.62.040, Plaintiff makes conclusory statements such as: the "definition [of event promoter] is sweeping in the breadth of included activities and covers a substantial number of activities unrelated to any legitimate or compelling governmental interest the statute seeks to ameliorate," SAC at ¶ 56; "[t]here is no legitimate or compelling interest in regulating these activities," *id.* at ¶ 58; "[b]ecause a license is required to engage in protected expressive activity, the entertainment code serves as a prior restraint," *id.* at ¶ 54. Plaintiff's allegations do not meet the pleading standard of Rule 8 because they consist of conclusory statements of law that do not meet Rule 8 and *Iqbal*'s standards.

           c.   Summary

      Thus, given that SJMC § 6.62.040 neither forbids future expressive activity nor requires advanced approval for expressive activity, SJMC § 6.62.040 is not a prior restraint on speech. Moreover, Plaintiff's allegations that SJMC § 6.62.040 is unconstitutional fails to meet Rule 8's pleading standard. Thus, Defendant's motion to dismiss Plaintiff's claim that SJMC § 6.62.040 is a prior restraint of speech is GRANTED.

      The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. In its October 29, 2018 Order, the Court dismissed the First Amendment claims against Defendant because the first amended complaint failed to meet the pleading standard of Rule 8. ECF No. 51 at 9. The Court warned that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.* at 13. Nonetheless, Plaintiff failed to cure the deficiencies because Plaintiff's pleadings still fail to meet the pleading

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

standard of Rule 8. In addition, any amendment would be futile because SJMC § 6.62.040 is not a prior restraint on speech, an obstacle that cannot be overcome with amended pleadings. Moreover, it would be unduly prejudicial to Defendant to litigate a third motion to dismiss regarding the same deficiencies. Thus, leave to amend is DENIED.

**2. SJMC § 6.62.360(B)**

SJMC § 6.62.360(B) states:

> Each event promoter, and any other persons responsible for the operation of the event site, excluding the city, its agents, officers and employees, shall be jointly and severally liable for:
>
> 1. Any violation of this chapter;
>
> 2. Any violation of any other license or permit required by the event; and
>
> 3. Any violation of any other applicable law that arises out of the promotion of the event.

Like in the analysis of SJMC § 6.62.040, the provision defining "event promoter" discussed above, the threshold question is whether SJMC § 6.62.360(B) is a prior restraint. The Court finds that SJMC § 6.62.360(B) is not a prior restraint on speech. Moreover, the Court finds that the SAC fails to plead how SJMC § 6.62.360(B) is a prior restraint on speech.

a. SJMC § 6.62.360(B) is not a Prior Restraint

As discussed above, the "term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander*, 509 U.S. at 550 (internal quotation marks omitted) (emphasis in original). Here, SJMC § 6.62.360(B) is not a prior restraint on speech because SJMC § 6.62.360(B) is an ordinance about allocating liability for violations of the SJMC chapter on event promoters. The ordinance does not forbid or censor communications by event promoters or "any other persons responsible for the operation of the event site" in advance of any potential speech activity.

Moreover, the United States Supreme Court has distinguished between prior restraint and

17

punishment for past behavior, which is not a prior restraint. As discussed above, in *Alexander*, the defendant was an owner of an adult entertainment business convicted of obscenity charges and violations of RICO. 509 U.S. at 546-47. Part of the defendant's sentence imposed by the district court involved forfeiting various assets, which put the defendant out of business. *Id.* at 546, 548-49. The *Alexander* defendant argued that the forfeiture constituted an unconstitutional prior restraint, but the *Alexander* court held that to accept the defendant's argument "would virtually obliterate the distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Id.* at 550; *see also JSLG, Inc. v. City of Waco*, 2011 WL 13180227, at *5 (W.D. Tex. Sept. 26, 2011) ("[T]he ordinances at issue punish past behavior rather than prohibiting future acts and, thus, does not constitute a prior restraint on any type of expressive behavior protected by the First Amendment."); *Otto v. City of Boca Raton, Fla.*, 353 F. Supp. 3d 1237, 1271 (S.D. Fla. 2019) ("A prior restraint on speech is distinguishable from a penalization of past speech."). Here, SJMC § 6.62.360(B) renders event promoters and "any other persons responsible for the operation of the event site" jointly and severally liable if they violate any provision of the SJMC chapter on event promoters. Thus, SJMC § 6.62.360(B) is more akin to the ordinances in *JSLG*, which punish *past behavior* rather than restrain future speech. Event promoters and people responsible for the operation of an event site cannot be liable in advance for something they had not done yet. Thus, SJMC § 6.62.360(B) is not a prior restraint because it punishes past behavior.

            b.   Plaintiff Fails to State a Claim that SJMC § 6.62.360(B) is a Prior Restraint

The SAC fails to plead why SJMC § 6.62.360(B) is a prior restraint of speech. As discussed above, "[t]hreadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet Rule 8's requirement that "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. Moreover, courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer*, 649 F.3d at 1064. The only

18

substantive allegation in the SAC that mentions SJMC § 6.62.360(B) states that "SJMC § 6.62.360(B), is an unconstitutional restriction on speech because it holds a licensee strictly liable for a promoter's actions regardless of fault. This is not constitutionally permissible for an ordinance regulating speech." SAC at ¶ 59. This allegation summarily concludes that SJMC § 6.62.360(B) is unconstitutional because it imposes strict liability on a licensee for an event promoter's actions. Per *Fayer*, the allegation is a legal conclusion insufficient to defeat a motion to dismiss. Additionally, Plaintiff's briefing fails to cite any law, and the Court has not found any, supporting the notion that a strict liability scheme like in SJMC § 6.62.360(B) necessarily implicates the prior restraint doctrine.

### c. Summary

Defendant's motion to dismiss Plaintiff's claim that SJMC § 6.62.360(B) is a prior restraint of speech is GRANTED.

The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. In its October 29, 2018 Order, the Court dismissed the First Amendment claims against Defendant because the first amended complaint failed to meet the pleading standard of Rule 8. ECF No. 51 at 9. The Court warned that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.* at 13. Nonetheless, Plaintiff failed to cure the deficiencies. Any amendment would be futile because SJMC § 6.62.360(B) is not a prior restraint on speech, an obstacle that cannot be overcome with amended pleading. Moreover, it would be unduly prejudicial to Defendant to litigate a third motion to dismiss regarding the same deficiencies. Thus, leave to amend is DENIED.

### 3. SJMC §§ 6.60.290, 6.60.370(L), and 6.60.383(F)

Plaintiff calls SJMC §§ 6.60.290, 6.60.370(L), and 6.60.383(F) the "Nuisance Provisions." SAC at ¶ 62. The Court first discusses SJMC § 6.60.290, then SJMC § 6.60.370(L) and SJMC § 6.60.383(F).

### a. SJMC § 6.60.290

United States District Court
Northern District of California

SJMC § 6.60.290 states:

> The permittee shall not conduct the permitted business in a manner that creates or results in a public nuisance, as defined in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty (150) feet of the permitted premises.

SJMC § 1.13.050, to which SJMC § 6.60.290 refers, lists 15 behaviors—for instance, drinking alcoholic beverages in public, public urination, and prostitution—as examples of public nuisances, and also states that a public nuisance is the "maintenance or use of property in the city in a manner that jeopardizes or endangers the health, safety or welfare of persons on the premises or in the surrounding area . . . ."

Moreover, Cal. Civ. Code § 3479, to which SJMC § 6.60.290 also refers, states:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

In addition, Cal. Civ. Code § 3480, to which SJMC § 6.60.290 also refers, states:

> A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.

Plaintiff asserts that the "Nuisance Provisions combined with SJMC § 1.13.050, Cal. Civ. Code § 3479, and Cal. Civ. Code § 3480" are all unconstitutional. SAC at ¶ 63. However, none of these ordinances and laws are prior restraints on speech. Moreover, the Court finds that the SAC fails to adequately plead how SJMC § 6.62.360(B), SJMC § 1.13.050, Cal. Civ. Code § 3479, and Cal. Civ. Code § 3480 are prior restraints on speech.

       i.   SJMC §§ 6.60.290, 1.13.050, Cal. Civ. Code §§ 3479, 3480 are not Prior Restraints

As discussed above, in *Arcara*, county officials, relying on public nuisance ordinances that permitted the closure of properties used for lewdness or prostitution, sought to close a bookstore.

478 U.S. at 699-700. The bookstore owners claimed that application of the public nuisance ordinances to close the bookstore would "impermissibly interfere with their First Amendment right to sell books on the premises." *Id.* at 700. The *Arcara* court rejected the bookstore owners' argument that closure of the bookstore pursuant to the nuisance ordinances was a prior restraint. In particular, the *Arcara* court found that "the closure order . . . would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with expressive conduct at all." *Id.* at 705 n.2.

Here, SJMC § 6.60.290—which prohibits conducting a permitted business that creates or results in a public nuisance—combined with the definitions of public nuisance found in SJMC § 1.13.050 and Cal. Civ. Code §§ 3479, 3480 is akin to the nuisance provisions of *Arcara*, which the *Arcara* court found not to be prior restraints. For instance, none of the SJMC and California state law provisions prevent permitted businesses from engaging in any First Amendment activity. Moreover, enforcement of the SJMC and California Civil Code provisions, much like the imposition of the closure order in *Arcara*, does not implicate any expressive conduct because there is no "advance determination" that any kind of speech activity is impermissible.

Also as discussed above, the "term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander*, 509 U.S. at 550 (internal quotation marks omitted) (emphasis in original). Nothing in SJMC §§ 6.60.290, 1.13.050 and Cal. Civ. Code §§ 3479, 3480 forbids communication in advance of the time the communication is to occur. Rather, SJMC § 6.60.290 specifies that a permitted business should not create a public nuisance. Under *Arcara*, such public nuisance provisions do not implicate prior restraint doctrine. 478 U.S. at 705 n.2. Furthermore, the remaining provisions—SJMC § 1.13.050 and Cal. Civ. Code §§ 3479, 3480— merely define what constitutes a public nuisance and do not restrict speech in any way.

Moreover, SJMC § 6.60.290 combined with the definitions of public nuisance found in SJMC § 1.13.050 and Cal. Civ. Code §§ 3479, 3480 are not prior restraints, but rather, subsequent

United States District Court
Northern District of California

punishments. There is a "distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander*, 509 U.S. at 550. The Ninth Circuit has held that a subsequent punishment involves "punishment of individuals after the expression has occurred." *Burch v. Barker*, 861 F.2d 1149, 1154 (9th Cir. 1988); *see also Berndt v. Cal. Dep't of Corrections*, 2004 WL 1774227, at *1 (N.D. Cal. Aug. 9, 2004) ("A prior restraint prevents the speech from reaching the public, while subsequent punishment merely subjects the speaker to bear the consequences afterward."). Here, a determination that a permitted business was conducted "in a manner that creates or results in a public nuisance," defined in SJMC § 1.13.050 and Cal. Civ. Code §§ 3479, 3480, is necessarily a subsequent punishment because a permitted business can only be cited for creating or resulting in a public nuisance under SJMC § 6.60.290 *after* a public nuisance takes place. Until conduct qualifying as a public nuisance takes place, the SJMC and California Civil Code provisions at issue here do not apply.

       ii.   Plaintiff Fails to State a Claim that SJMC §§ 6.60.290, 1.13.050 and Cal. Civ. Code §§ 3479, 3480 are Prior Restraints

The SAC fails to plead why SJMC §§ 6.60.290, 1.13.050 and Cal. Civ. Code §§ 3479, 3480 are prior restraints of speech. As discussed above, "[t]hreadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet Rule 8's requirement that "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. Moreover, courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer*, 649 F.3d at 1064.

Here, the SAC states the legal conclusion that the "Nuisance Provisions combined with SJMC § 1.13.050, Cal. Civ. Code § 3479, and Cal. Civ. Code § 3480 which the Nuisance Provisions incorporate by reference, are unconstitutional on their face and as applied to Plaintiff under the First Amendment . . . for numerous and varied reasons." SAC at ¶ 63. The SAC then alleges a laundry list of legal conclusions as to why the provisions in question are unconstitutional.

For instance, the SAC alleges that: the "Nuisance Provisions contain various terms and phrases that are impermissibly vague and ambiguous"; the "Nuisance Provisions fail to further any important, substantial, or compelling governmental interest"; the "Nuisance Provisions unduly, impermissibly, and unconstitutionally restrict the ability of live entertainers from engaging in First Amendment activities"; and the "Nuisance Provisions permit restrictions on speech and expression that are greater than are essential to further any asserted governmental interests." *Id.* The remaining allegations regarding the Nuisance Provisions are equally as conclusory and vague as the above allegations. Under *Fayer*, none of these allegations are sufficient to defeat a motion to dismiss because these are all "conclusory allegations of law." 649 F.3d at 1064.

### iii. Summary

Defendant's motion to dismiss Plaintiff's claim that SJMC §§ 6.60.290, 1.13.050 and Cal. Civ. Code §§ 3479, 3480 are prior restraints of speech is GRANTED.

The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. In its October 29, 2018 Order, the Court dismissed the First Amendment claims against Defendant because the first amended complaint failed to meet the pleading standard of Rule 8. ECF No. 51 at 9. The Court warned that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.* at 13. Nonetheless, Plaintiff failed to cure the deficiencies. Any amendment would be futile because SJMC §§ 6.60.290, 1.13.050 and Cal. Civ. Code §§ 3479 are not prior restraints on speech, an obstacle that cannot be overcome with amended pleading. Moreover, it would be unduly prejudicial to Defendant to litigate a third motion to dismiss regarding the same deficiencies. Thus, leave to amend is DENIED.

### b. SJMC §§ 6.60.370(L), 6.60.383(F)

SJMC § 6.60.370(L) states:

> An application for an entertainment permit or entertainment license shall be denied, and an entertainment permit or entertainment license issued pursuant to this title may be suspended or revoked by the chief of police upon any of the following grounds: . . . .

The Applicant, licensee or permittee has conducted the public entertainment business, in a manner that creates or results in a public nuisance, as defined in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty feet of the premises . . . .

SJMC § 6.60.383(F) states:

An application to renew an entertainment permit or entertainment license shall be denied by the chief of police upon any of the following grounds: . . . .

The premises or the public entertainment business has been the subject of an administrative, civil or criminal nuisance abatement action and court judgment or administrative determination finding the premises or the public entertainment business to be a nuisance within the past five years . . . .

At bottom, SJMC §§ 6.60.370(L), 6.60.383(F) allow the chief of police to suspend, revoke, or deny an entertainment permit if a public entertainment business created a public nuisance (as defined in SJMC § 1.13.050 and Cal. Civ. Code §§ 3479, 3480, the same provisions discussed above) or if the public entertainment business was subject to a determination that it was a nuisance. Because of the similarities between SJMC § 6.60.370(L) and SJMC § 6.60.383(F), the Court addresses them together. First, the Court finds that SJMC §§ 6.60.370(L), 6.60.383(F) are not prior restraints. Then, the Court determines that Plaintiff has failed to adequately plead that SJMC §§ 6.60.370(L), 6.60.383(F) are prior restraints.

i.  SJMC §§ 6.60.370(L), 6.60.383(F) are not Prior Restraints

Once again, the Court turns to *Arcara* for guidance. In *Acara*, county officials, relying on public nuisance ordinances that permitted the closure of properties used for lewdness or prostitution, sought to close a bookstore. 478 U.S. at 699-700. The bookstore owners claimed that application of the public nuisance ordinances to close the bookstore would "impermissibly interfere with their First Amendment right to sell books on the premises." *Id.* at 700. The *Arcara* court rejected the bookstore owners' argument that closure of the bookstore pursuant to the nuisance ordinances was a prior restraint. The *Arcara* court found that the bookstore closure order differed from a prior restraint because first, "the order would impose no restraint at all on the dissemination of particular materials, since respondents are free to carry on their bookselling

24

business at another location." *Id.* at 705 n.2. Second, "the closure order sought would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with any expressive conduct at all." *Id.*

*Arcara* stands for the proposition that even though public nuisance ordinances might provide the legal authority to shut down businesses if the businesses violate certain ordinances, the ordinances are not necessarily a prior restraint on expressive activities. Indeed, this interpretation of *Arcara* is consistent with how other courts have interpreted *Arcara*. For instance, the Seventh Circuit relied on *Arcara* in holding that "the mere fact that [the defendant] has the authority to close a business because it violates the ordinance does not transform the ordinance into a prior restraint on expressive activities." *Berg v. Health and Hosp Corp. of Marion Cty, Ind.*, 865 F.2d 797, 802 (7th Cir. 1989).

Here, SJMC §§ 6.60.370(L), 6.60.383(F) confer the chief of police with the power to suspend, revoke, or deny an entertainment permit if the business in question causes a public nuisance or if the business has been subject to a determination that it has been a public nuisance. The instant case can be closely analogized to *Arcara*, where the public nuisance ordinances were invoked to shut down the bookstore, and yet, the *Arcara* court found that the ordinances were not prior restraints. 478 U.S. at 705 n.2. The *Arcora* court's logic behind why the ordinances were not prior restraints also apply to the instant case. For instance, even if the chief of police Edgardo Garcia suspended or revoked Plaintiff's entertainment permit or license, the Plaintiff is free to carry on at another location and apply for a new entertainment permit. In addition, assuming *arguendo* that chief of police Garcia suspends or revokes Plaintiff's entertainment permit when Plaintiff applies to renew its existing entertainment permit "within the coming year," SAC at ¶ 65, the suspension or revocation would have nothing to do with Plaintiff's expressive activity. The suspension or revocation may have resulted from Plaintiff's creation of a public nuisance the night of the Lucci event, *id.* at ¶ 17, because SJMC §§ 6.60.370(L), 6.60.383(F) confer the chief of

police with the power to deny an entertainment permit renewal if there was a determination that a business was a public nuisance, or to revoke a permit if the business was a public nuisance.

        ii.  Plaintiff Fails to State a Claim that SJMC §§ 6.60.370(L), 6.60.383(F) are Prior Restraints

As discussed above, "[t]hreadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet Rule 8's requirement that "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. Moreover, courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer*, 649 F.3d at 1064.

Above, the Court has already discussed portions of the SAC that relate to the "Nuisance Provisions" via the Court's discussion of SJMC § 6.60.290, one of the Nuisance Provisions and the ordinance that stated that permitted businesses "shall not conduct the permitted business in a manner that creates or results in a public nuisance." The SAC mostly groups the allegations regarding the Nuisance Provisions together. *See, e.g.*, SAC at ¶ 62 ("The Nuisance Provisions are vague and substantially overbroad . . . ."). As a result, because the SAC failed to state a claim that SJMC § 6.60.290 is a prior restraint, the SAC also fails to that a claim that SJMC §§ 6.60.370(L), 6.60.383(F) are prior restraints.

The SAC alleges a laundry list of legal conclusions as to why the Nuisance Provisions are unconstitutional. For example, the SAC alleges that: the "Nuisance Provisions contain various terms and phrases that are impermissibly vague and ambitious"; the "Nuisance Provisions fail to further any important, substantial, or compelling governmental interest"; the "Nuisance Provisions unduly, impermissibly, and unconstitutionally restrict the ability of live entertainers from engaging in First Amendment activities"; and the "Nuisance Provisions permit restrictions on speech and expression that are greater than are essential to further any asserted governmental interests." SAC at ¶ 63. The remaining allegations regarding the Nuisance Provisions are equally as vague. Under *Fayer*, none of these allegations are sufficient to defeat a motion to dismiss because these are all

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

"conclusory allegations of law." 649 F.3d at 1064.

### iii. Summary

Defendant's motion to dismiss Plaintiff's claim that SJMC §§ 6.60.370(L), 6.60.383(F) are prior restraints of speech is GRANTED.

The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. In its October 29, 2018 Order, the Court dismissed the First Amendment claims against Defendant because the first amended complaint failed to meet the pleading standard of Rule 8. ECF No. 51 at 9. The Court warned that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.* at 13. Nonetheless, Plaintiff failed to cure the deficiencies. Any amendment would be futile because SJMC §§ 6.60.370(L), 6.60.383(F) are not prior restraints on speech, an obstacle that cannot be overcome with amended pleading. Moreover, it would be unduly prejudicial to Defendant to litigate a third motion to dismiss regarding the same deficiencies. Thus, leave to amend is DENIED.

### 4. SJMC § 6.60.240

SJMC § 6.60.240 states in part: "[t]he permittee shall comply with, and ensure that the permittee's owners, managers and employees comply with the standards for internal and external security arrangements specified below." The ordinance then lists ten, relatively lengthy requirements for security personnel at a permitted business, such as: "[t]here shall be a minimum of one security personnel on duty for up to and including the first fifty patrons on side. Once the number of patrons exceeds fifty, there shall be an additional one security personnel on duty for up to and including every additional fifty patrons on site." SJMC § 6.60.240(A)(1). The Court finds that SJMC § 6.60.240 is not an ordinance that implicates any First Amendment rights. Moreover, the Court finds that Plaintiff has failed to state a claim for prior restraint.

### a. SJMC § 6.60.240 Does Not Implicate the First Amendment

"[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567

(2011). Accordingly, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* The "threshold question is whether conduct with a 'significant expressive element' drew the legal remedy or the ordinance has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015). "A court may consider the 'inevitable effect of a statute on its face,' as well as a statute's 'stated purpose.'" *Sorrell*, 564 U.S. at 565. The "First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* at 567.

The answer to the threshold question of whether SJMC § 6.60.240 has the "inevitable effect of 'singling out those engaged in expressive activity'" is an unequivocal no. *Id.* There is no plausible way to read SJMC § 6.60.240 to implicate expressive activity, as the ordinance purely regulates the provision of security at permitted businesses. Likewise, in *International Franchise*, the plaintiff challenged Seattle's minimum wage ordinance as it pertains to franchised businesses under the First Amendment because "two of the three definitional criteria for franchises are based on speech and association." 803 F.3d at 408. The Ninth Circuit squarely rejected the plaintiff's claim that the First Amendment was implicated by Seattle's ordinance because the ordinance "is plainly an economic regulation that does not target speech or expressive conduct." *Id.* "The conduct at issue—the decision of a franchisor and a franchisee to form a business relationship and their resulting business activities—'exhibits nothing that even the most vivid imagination might deem uniquely expressive.'" *Id.* (quoting *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 53 (1st Cir. 2005)). Here, there is an even clearer example than in *International Franchise* of an ordinance that does not concern the First Amendment. No part of SJMC § 6.60.240 relates to speech, unlike in *International Franchise* where two of the three criteria for defining a franchise are based on speech and association. Moreover, SJMC § 6.60.240 could be considered an ordinance that relates to commerce because it involves how a commercial establishment provides security for its patrons. This is economic activity, and per *Sorrell*, "restrictions on protected

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

expression are distinct from restrictions on economic activity." *Sorrell*, 564 U.S. at 567.

Thus, because SJMC § 6.60.240 is not an ordinance that implicates the First Amendment, it follows that there is no prior restraint of speech implicated here.

### b. Plaintiff Fails to State a Claim that SJMC § 6.60.240 is a Prior Restraint

The SAC only makes one substantive allegation regarding the constitutionality of SJMC § 6.60.240. The SAC alleges: "Defendant applied [SJMC § 6.60.240] to support the suspension of Plaintiff's entertainment permit due to minor pushing and shoving in the line to enter the club. This statute was applied unconstitutionally by applying it so broadly as to allow restrictions on speech as a consequence of minor pushing and shoving." SAC at ¶ 64.

There is a "distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander*, 509 U.S. at 550. The Ninth Circuit has held that a subsequent punishment involves "punishment of individuals after the expression has occurred." *Burch v. Barker*, 861 F.2d 1149, 1154 (9th Cir. 1988).

Here, Plaintiff's allegation of unconstitutionality is predicated on SJMC § 6.60.240 being used to support suspending Plaintiff's entertainment permit due to minor pushing and shoving. However, assuming *arguendo* that SJMC § 6.60.240 implicates speech rights, Plaintiff does not allege that SJMC § 6.60.240 was applied *before* any speech rights were exercised. Rather, Plaintiff alleges that SJMC § 6.60.240 is unconstitutional because it was used to punish Plaintiff after the alleged pushing and shoving to enter the club occurred. Therefore, Plaintiff fails to state a claim that SJMC § 6.60.240 is a prior restraint because per Plaintiff's own pleadings, the application of SJMC § 6.60.240 as a punishment took place *after* the purported pushing and shoving.

### c. Summary

Defendant's motion to dismiss Plaintiff's claim that SJMC § 6.60.240 is a prior restraint of speech is GRANTED.

The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. In its October 29, 2018 Order, the Court dismissed

the First Amendment claims against Defendant because the first amended complaint failed to meet the pleading standard of Rule 8. ECF No. 51 at 9. The Court warned that "failure to cure the deficiencies identified in this Order will result in dismissal with prejudice." *Id.* at 13. Nonetheless, Plaintiff failed to cure the deficiencies. Any amendment would be futile because SJMC § 6.60.240 is not a prior restraint on speech and fails to implicate the First Amendment, obstacles that cannot be overcome with amended pleading. Moreover, it would be unduly prejudicial to Defendant to litigate a third motion to dismiss regarding the same deficiencies. Thus, leave to amend is DENIED.

### 5. SAC Paragraph 55

Paragraph 55 of the SAC alleges that SJMC § 6.62.410 is unconstitutional. SJMC § 6.62.410 states that any "person applying for an event prompter permit shall agree to fully indemnify, defend and hold harmless the city, its officers, employees and agents for all claims, losses, or liability that arise out of the issuance or use of the event prompter permit."

Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc.*, 352 F. Supp. 2d at 1057 (internal citations omitted).

However, Defendant argues, and Plaintiff concedes, that the reference to SJMC § 6.62.410, an indemnification provision, was made in error because indemnification has nothing to do with the First Amendment. Mot. at 12; Opp. at 5 ("§ 6.62.400—the provision immediately preceding § 6.62.410—. . . is the section Plaintiff intended to identify. This error was carried out to several other places in the SAC, including ¶ 55 which Defendant points out and ¶ 94."). Plaintiff attempts to remedy its error by identifying SJMC § 6.62.400, the provision of the SJMC Plaintiff *intended* to argue was unconstitutional. However, "the complaint may not be amended by briefs in opposition to a motion to dismiss." *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010));

United States District Court
Northern District of California

*see also Merritt v. Metro. Life Ins. Co.*, 2010 WL 725073, at *1 (N.D. Cal. Mar. 1, 2010) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Thus, the Court does not consider what Plaintiff *intended* to allege, but rather, considers what *is* alleged in the SAC. Thus, paragraph 55 of the SAC is hereby STRICKEN as immaterial. *See* Fed. R. Civ. P. 12(f).

### 6. SAC Paragraph 63

Paragraph 63 of the SAC states various reasons why Plaintiff believes the Nuisance Provisions (SJMC §§ 6.60.290, 6.60.370(L), 6.60.383(F), all of which are discussed above) are unconstitutional. Defendant argues that paragraph 63 should be stricken because "[t]here are no facts in the SAC that relate to this conclusory allegation," and that the "allegation does not support a plausible claim that Plaintiff is entitled to relief. Mot. at 13.

"If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc.*, 352 F. Supp. 2d at 1057 (internal citations omitted).

As aforementioned, paragraph 63 states reasons why Plaintiff believes the Nuisance Provisions to be unconstitutional. These allegations bear on the question of the alleged unconstitutionality of the Nuisance Provisions, so naturally, they bear on an issue in the litigation. Thus, the Court DENIES Defendant's motion to strike paragraph 63.

### B. Second Cause of Action: Violation of Fourteenth Amendment Due Process under 42 U.S.C. § 1983

The Court's October 29, 2018 Order held that Plaintiff's First Amendment § 1983 claim failed to identify the specific SJMC provisions at issue and thus failed to state a claim for relief under Rule 8. ECF No. 51 at 10. The Court warned that "failure to cure the deficiencies . . . will result in dismissal with prejudice of the claims." *Id.* at 13.

Plaintiff alleges that SJMC § 6.62.040 (defining "event promoter") and the Nuisance Provisions (SJMC §§ 6.60.290, 6.60.370(L), and 6.60.383) violate the Constitution because they contain "overbroad and vague terms that do not give adequate guidance to those individuals who

31

would be law-abiding." SAC at ¶¶ 69-71. Defendant argues that the Court should dismiss this due process cause of action because courts have held that if a constitutional claim is covered by a more specific constitutional provision, the cause of action should be analyzed under the more specific constitutional provision rather than as a due process claim. Mot. at 13. Defendant believes that Plaintiff's first cause of action—violation of the First Amendment—is the more specific constitutional provision that covers claims under the due process cause of action. Plaintiff responds by arguing that courts have narrowly interpreted this rule preventing a plaintiff from asserting both a due process claim and a more specific constitutional provision covering the same substance as the due process claim. Opp. at 8-9. The Court finds that Defendant has the better argument.

Pursuant to United States Supreme Court law, if a Plaintiff alleges a substantive due process violation but another, more specific constitutional provision applies to Plaintiff's allegations, the allegations should be analyzed under the more specific constitutional provision. Specifically, the United States Supreme Court held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (same).

Here, all of the allegations under the SAC's second cause of action, which alleges a violation of due process under the Fourteenth Amendment brought under 42 U.S.C. § 1983, are nearly identical to the allegations under the SAC's first cause of action, which alleges a violation of the First Amendment brought under 42 U.S.C. § 1983.

For instance, under the second cause of action, Plaintiff claims that SJMC §§ 6.60.290, 6.60.370(L), 6.60.383 (the "Nuisance Provisions") are overbroad and vague. *Id.* at ¶ 70. Under the first cause of action, Plaintiff alleges that the "Nuisance Provisions contain various terms and

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

phrases that are impermissibly vague and ambiguous." *Id.* at ¶ 63. Thus, Plaintiff attacks the Nuisance Provisions for being vague and ambiguous under substantive due process, even though Plaintiff also asserts that the Nuisance Provisions are vague and ambiguous under the First Amendment. However, the First Amendment is a more specific constitutional provision than substantive due process. *Contest Promotions, LLC v. City & Cty. of San Francisco*, 100 F. Supp. 3d 835, 846 (N.D. Cal. 2015) (dismissing a substantive due process claim in light of the "more specific requirements of the First Amendment"). Thus, the more specific First Amendment and not substantive due process provides Plaintiff with a cause of action regarding the Nuisance Provisions.

Moreover, under the second cause of action, Plaintiff claims that SJMC § 6.62.040 and the Nuisance Provisions violate the Constitution because these provisions "confer arbitrary power to the San Jose Police to determine what actions constitute a violation and what sanctions should be associated." *Id.* at ¶ 71. Under the first cause of action, Plaintiff alleges that the "Nuisance Provisions permit unbridled discretion by the permitting authority (the San Jose Police Department) and administrators in determining what actions will warrant the suppression of speech." *Id.* at ¶ 63. Once again, Plaintiff's claim can and should be analyzed under the more specific constitutional provision, the First Amendment, rather than substantive due process.

The instant case can be analogized to *Hufford v. McEnaney*, 249 F.3d 1142 (9th Cir. 2001). In *Hufford*, the plaintiff was a firefighter who was a whistleblower on the impermissible storage of pornographic materials on the fire station's computers. *Id.* at 1155. After the *Hufford* plaintiff acted as a whistleblower, his "standing within the [Fire] Department began to fall." *Id.* at 1146. For instance, the *Hufford* plaintiff received his first written reprimand ever within three months of the conclusion of a police investigation into the pornography. *Id.* at 1147. He then received a subsequent reprimand documenting various complaints against him. *Id.* Ultimately, the *Hufford* plaintiff received notice that the fire department intended to discharge him. *Id.* After his discharge, the *Hufford* plaintiff brought suit against various fire department officials and his union. *Id.* at

United States District Court
Northern District of California

1148. The plaintiff claimed that, *inter alia*, the defendants violated his First Amendment and due process rights. *Id.* The *Hufford* court concluded that "because the First Amendment explicitly covers [plaintiff's retaliation] claim, the First Amendment, not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the [plaintiff's] claim[s]." *Id.* at 1151.

Here, like in *Hufford*, the First Amendment covers every single one of Plaintiff's due process claims. Plaintiff alleges that under the First Amendment, the challenged SJMC ordinances are overbroad and vague. SAC at p. 16. But overbreadth and vagueness theories are exactly what Plaintiff alleges in Plaintiff's due process claim regarding various SJMC ordinances. *Id.* at ¶¶ 67-73. It is well-established First Amendment law that an ordinance can be challenged on overbreadth and vagueness grounds. *See, e.g.*, *O'Brien v. Welty*, 818 F.3d 920, 929-30 (9th Cir. 2016) (analyzing a regulation using the First Amendment's rubric on overbreadth and vagueness). Indeed, the fact that Plaintiff even raised a First Amendment claim challenging the constitutionality of the same SJMC ordinances that are being litigated under the due process claim means that Plaintiff concedes that a First Amendment challenge can be brought against those same SJMC ordinances. Like in *Hufford*, "plaintiffs cannot 'double up' constitutional claims." *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).

Plaintiff cites *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993), for the proposition that the United States Supreme Court has "rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another." However, *James Daniel* stands for the general proposition that the applicability of one constitutional provision does not preclude the applicability of another constitutional provision. *See id.* ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.") (quoting *Soldal v. Cook Cty.*, 506 U.S. 56, 70 (1992)). But here, a more nuanced point is being advanced: if a constitutional claim "is covered by a specific

34

constitutional provision," then the constitutional claim should not be analyzed under due process. *Lanier*, 520 U.S. at 272 n.7. In other words, if there is a choice between analyzing a constitutional claim under due process or a more specific constitutional provision, the more specific constitutional provision should apply. *James Daniel* does not address the instant situation where there is a choice between analyzing a constitutional claim under due process or another, more specific constitutional provision.

Plaintiff also cites *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990), as an example of a case that involved both First Amendment claims and Fourteenth Amendment due process claims. However, *FW/PBS* is inapposite. *FW/PBS* involves a constitutional challenge to various portions of Dallas' licensing scheme regulating sexually-oriented businesses. *Id.* at 224. However, the First Amendment challenge is brought against a different aspect of Dallas' licensing scheme than the due process challenge. *Id.* at 223-24, 236. Thus, *FW/PBS* is not applicable to the situation here, where the *same* ordinances are being challenged under both the First Amendment and due process.

Therefore, Defendant's motion to dismiss Plaintiff's second cause of action—violation of Fourteenth Amendment due process under 42 U.S.C. § 1983—is hereby GRANTED. The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. It would be futile to amend the SAC to state a due process claim in view of the existence of the more specific First Amendment claim, and it would unduly prejudice Defendant to litigate a claim that fails as a matter of law.

## C. Third Cause of Action: Violation of Fourteenth Amendment Procedural Due Process under 42 U.S.C. § 1983

Plaintiff alleges that Defendant violated Plaintiff's procedural due process rights because Plaintiff was denied a fair hearing at the administrative hearing on Plaintiff's appeal of chief of police Edgardo Garcia's Notice of Intended Action to revoke Defendant's entertainment permit. SAC at ¶ 76-86. Specifically, Plaintiff alleges that the administrative hearing before deputy chief of police Bustillos violated due process.

Defendant posits that an administrative hearing need not resemble full-blown litigation

35

before a court, and that nothing that took place during the Plaintiff's process of appealing the initial revocation of SJ Live's entertainment permit rises to the level of a due process violation. Mot. at 15-17. The Court finds Defendant's arguments more compelling.

Courts apply the 3-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1970), to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at the hearing given the particularities of the deprivation." *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1979)). "The *Mathews* factors are: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id.* at 864.

The Court turns to the first *Mathews* factor, which is the private interest affected. "The duration of any potentially wrongful deprivation . . . is an important factor in assessing the impact of official action on the private interest involved." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). Here, a potential deprivation is a *permanent* revocation of Plaintiff's entertainment permit, so Plaintiff's private interest is undoubtedly substantial. For instance, in *Chalkboard, Inc. v. Brandt*, the Ninth Circuit held that a business license for a daycare provider "was essential to its entire business," and thus the "private interest was clearly substantial." 902 F.2d 1375, 1381 (9th Cir. 1989). Thus, the first *Mathews* factor weighs in Plaintiff's favor.

Next, the Court turns to the second *Mathews* factor, which is the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards. The United States Supreme Court has held that a predeprivation hearing "need not be elaborate." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). "The hearing need not even approximate a trial-like proceeding; in fact, it may be 'very limited' and still pass constitutional muster." *Brewster v. Bd. Of Educ. Of Lynwood Unified School Dist.*, 149 F.3d 971, 985 (9th Cir. 1998) (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)). A due process "plaintiff need only be accorded oral or written notice of the charges against him, an explanation of the [adverse]

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

evidence, and an opportunity to present his side of the story." *Yagman*, 852 F.3d at 864. Here, the risk of erroneous deprivation is extremely low because the process of appealing a Notice of Intended Action in San Jose far exceeds the requirements described by *Yagman*.

For instance, if Defendant believes there are grounds for a denial, suspension, or revocation of an entertainment business' license, then the chief of police issues a Notice of Intended Action which "shall state all the grounds upon which the denial, suspension or revocation is based." SJMC § 6.60.500(B). To appeal a Notice of Intended Action, a business owner has the right to an administrative hearing. "At the hearing . . . , the applicant, licensee or permittee shall be given the opportunity to present witnesses and documentary evidence." SJMC § 6.60.510(D). If a business owner is unsatisfied with the result of the administrative hearing, then the owner may further appeal to the Appeal Hearings Board. SJMC § 6.60.530(A). The Appeals Hearing Board shall consider any "relevant documentary and testamentary material submitted by the appellant." Rules & Regs. of the San Jose Appeals Hearing Bd. § 401.

In addition, California courts provide an additional method by which a business owner can challenge an administrative decision. "A writ of administrative mandamus provides judicial review of administrative action . . . ." *Binyon v. State of Cal.*, 17 Cal. App. 4th 952, 955 (1993). "If the administrative decision involved or substantially affected a 'fundamental vested right,' the superior court exercises its independent judgment upon the evidence disclosed in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence." *HPT IHG-2 Properties Trust v. City of Anaheim*, 243 Cal. App. 4th 188, 198 (2015). Indeed, here, Plaintiff availed itself of all the aforementioned avenues of review.

Thus, under *Yagman*, San Jose's predeprivation appeals process unquestionably reduces the risk of erroneous deprivation. A business owner receives "written notice of the charges against him" as well as an "explanation of the [adverse] evidence" through the Notice of Intended Action. *Yagman*, 852 F.3d at 864. A business owner then has two additional opportunities under the SJMC

United States District Court
Northern District of California

to appeal the Notice of Intended Action: the hearing, and the Appeals Hearing Board. In both fora, the business owner has the right to "present his side of the story" by presenting testamentary and documentary evidence. *Id.* A business owner can also seek judicial review through a writ of administrative mandamus.

Nevertheless, Plaintiff alleges the administrative hearing violated its procedural due process rights. Specifically, Plaintiff found problematic the fact that Defendant presented video[3] and witness testimony at the hearing but the Defendant refused to provide copies of the video or the witnesses' names to the Plaintiff. SAC at ¶ 79. Moreover, the hearing officer, deputy chief of police Bustillos, was the subordinate of chief of police Edgardo Garcia, who had issued the Notice of Intended Action. *Id.* at ¶ 81. In addition, San Jose city attorneys opposed Plaintiff in the administrative hearing and other lawyers from the same office advised the hearing officer, deputy chief of police Bustillos. *Id.* at ¶ 82. Also, deputy chief of police Bustillos made comments during the administrative hearing that called into question his impartiality. *Id.* at ¶ 83.

Almost all of Plaintiff's aforementioned grievances about the administrative hearing center around the question of deputy chief of police Bustillos' impartiality. Notably, the SAC is notably silent as to actual evidence of deputy chief of police Bustillos' bias. Because Plaintiff lacks actual evidence of Bustillos' bias, Plaintiff's allegations are comprised of insinuation and unfounded speculation.

Rather than relying on insinuation and unfounded speculation, the Court believes that reliable evidence of bias (or lack thereof) can present in the form of the actions taken by the individual in question. Here, despite being charged with reviewing his superior's decision, despite San Jose city attorneys both advising deputy chief of police Bustillos and opposing Plaintiff in the

---

[3] Plaintiff's SAC contradicts itself with regard to whether video evidence was presented at the hearing run by deputy chief of police Bustillos. For instance, Plaintiff alleges that instead of "presenting the video at the hearing before deputy chief of police Bustillos, Defendant presented police [officers] to testify as to what appeared on the videos." SAC at ¶ 80. However, the SAC also alleges that in the hearing, "Defendant relied on video evidence from the night in question." *Id.* at ¶ 79.

administrative hearing, and despite Bustillos' alleged remarks that cast doubt on his impartiality, Bustillos conducted an administrative hearing that *rejected* almost all of chief of police Edgardo Garcia's findings, rejected chief of police Garcia's recommended punishment, and instead imposed a much lighter punishment.

Specifically, chief of police Garcia's Notice of Intended Action sought to permanently revoke Plaintiff's entertainment permit. Chief of police Garcia based his decision on the following findings. First, Plaintiff used an unlicensed promoter in violation of SJMC § 6.62.200. SAC at ¶ 13. Second, Plaintiff left a significant group of patrons on the periphery of SJ Live's exterior in violation of SJMC § 6.60.240(F). *Id.* Third, Plaintiff failed to have security in or near an adjacent parking lot at the time of the shooting in violation of SJMC § 6.62.240(C). *Id.* Fourth, Plaintiff did not maintain a valid conditional use permit in violation of SJMC § 6.62.200. *Id.* Fifth, Plaintiff operated SJ Live in a way that constituted a public nuisance because the property was a site for acts of violence or disturbing the peace and because there were SJMC violations in the form of operational requirements, all in violation of SJMC § 6.62.290. *Id.* Sixth, Plaintiff created a public nuisance "by maintaining or using the property that jeopardizes or endangers the health, safety or welfare of persons on the premises or in the surrounding areas" in violation of SJMC § 1.13.050. *Id.* Seventh, Plaintiff operated a disorderly house in violation of Cal. Bus. & Prof. Code § 25601. *Id.*

However, after conducting the administrative hearing, deputy chief of police Bustillos rejected almost all of chief of police Garcia's findings. Bustillos only found that Plaintiff violated the SJMC by (1) hiring an unlicensed promoter, for whom Plaintiff was responsible, and (2) creating a public nuisance. *Id.*

Moreover, deputy chief of police Bustillos rejected chief of police Garcia's recommendation to permanently revoke Plaintiff's entertainment permit. *Id.* Instead, Bustillos recommended the much lighter punishment of suspending Plaintiff's entertainment permit for 30 days. *Id.*

1    Thus, the facts suggest that rather than being biased in favor of his superior, deputy chief

2    of police Bustillos exercised independent judgment by rejecting almost all of chief of police

3    Garcia's findings, rejecting chief of police Garcia's recommended punishment, and instead

4    imposing a much lighter punishment.

5    In addition, deputy chief of police Bustillos' recommendation after the administrative

6    hearing that Plaintiff's entertainment permit be suspended for 30 days was affirmed by both the

7    San Jose Appeals Hearing Board and the California Superior Court for Santa Clara County,

8    neither of which Plaintiff accuses of being biased in any way.

9    Indeed, the facts here are a good demonstration of how the multiple layers of review—

10   from the administrative hearing to the San Jose Appeals Hearing Board and to the California

11   Superior Court—work well together towards a just and fair result in accordance with the

12   requirements of procedural due process. Moreover, the facts here are also a good bellwether,

13   pursuant to the second *Mathews* factor, of how low the risk of erroneous deprivation is under the

14   scheme Defendant has established, with multiple avenues of appeal, to review Notices of Intended

15   Action.

16   Furthermore, in *Lugo v. Valverde*, the plaintiff had his driver's license suspended and

17   brought a § 1983 claim alleging a procedural due process violation. 2007 WL 9711714, at *1-*2

18   (S.D. Cal. July 24, 2007). However, the court rejected the plaintiff's claim, and found that "[w]ith

19   two layers of appeal—including full-fledged review in state court—California's license-

20   suspension procedure adequately safeguards against erroneous deprivations. Further, [plaintiff]

21   does not anywhere suggest what additional procedural safeguards would work more effectively."

22   *Id.* at *6. The instant case, like *Lugo*, allows for judicial challenges to the administrative decision,

23   as well as two layers of administrative appeal. Moreover, Plaintiff here has failed to suggest any

24   more effective procedural safeguards. Therefore, the second *Mathews* factor weighs in favor of

25   Defendant.

26   The Court now turns to the third *Mathews* factor: the government's interest, including the

27

28

burdens of additional procedural requirements. "It is a traditional exercise of the States' police powers to protect the health and safety of their citizens." *Hill v. Colorado*, 530 U.S. 703, 715 (2000). Indeed, "[p]reserving the peace is the first duty of government, and it is for the protection of the community from the predations of the idle, the contentious, and the brutal that government was invented." *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1126 (1997). Thus, San Jose's interest in preserving the peace are substantial. As for additional procedural requirements, the United States Supreme Court has held that at "some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost." *Mathews*, 424 U.S. at 348. As the *Lugo* court held, "two predeprivation hearings culminating with independent judicial review adequately insulates against the minor risk of an erroneous deprivation." 2007 WL 9711714, at *5. Here, additional procedural requirements are outweighed by cost because courts such as *Lugo* have found that the administrative and judicial review procedures almost identical to those offered in the instant case sufficiently provide predeprivation procedural due process. Indeed, the multiple avenues of appeal, whether they be administrative or judicial, allow for multiple opportunities for the Plaintiff to be "accorded oral or written notice of the charges against him, an explanation of the [adverse] evidence, and an opportunity to present his side of the story." *Yagman*, 852 F.3d at 864. Thus, the third *Mathews* factor weighs in favor of Defendant.

Thus, the Court GRANTS Defendant's motion to dismiss Plaintiff's third cause of action: violation of Fourteenth Amendment procedural due process under 42 U.S.C. § 1983. The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. It would be futile to attempt to amend the SAC to state a Fourteenth Amendment procedural due process claim under § 1983 because there was no deprivation of Plaintiff's procedural due process rights as a matter of law, and it would unduly prejudice Defendant to litigate a claim that fails as a matter of law. Thus, leave to amend is DENIED.

### D. Fourth Cause of Action: Interference with Free Speech and Due Process Rights under the California Constitution

Defendant argues that res judicata, otherwise known as claim preclusion, bars Plaintiff's California Constitution cause of action because the Superior Court of Santa Clara County denied Plaintiff's Writ of Administrative Mandamus and ruled that the administrative decision to suspend Plaintiff's entertainment permit was supported by substantial evidence. ECF No. 56, Ex. D at 2-3; Mot. at 18. Plaintiff, however, misunderstands Defendant's argument because Plaintiff's opposition discusses *issue* preclusion. Opp. at 15. There are "two distinct types of preclusion, claim preclusion and issue preclusion." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). Here, only claim preclusion is relevant because Defendant relies on claim preclusion to argue that the California Constitution cause of action is barred by claim preclusion. In considering Defendant's argument that claim preclusion bars Plaintiff's California Constitution cause of action, this Court must apply California claim preclusion law to the issue. *Marrese v. Am. Academy of Orthopaedic Surgeons*, 410 U.S. 373, 380 (1985) ("The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which . . . . commands a federal court to accept the rules chosen by the State from which the judgment is taken.").

Under California law, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 824 (2015). The Court addresses each claim preclusion prong in turn.

#### 1. The Same Cause of Action

Under California law, a "cause of action" is defined for purposes of claim preclusion by "employing a 'primary rights' theory." *Harper v. City of Monterey*, 2012 WL 195040, at *5 (N.D. Cal. Jan. 23, 2012) (citing *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004)), *aff'd*, 519 Fed. App'x 503 (9th Cir. 2013). In other words, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Id.* (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)). Thus, in other words, as long as the same primary right is at issue, claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (quoting *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 809 (9th Cir. 2007)).

The notion that claim preclusion can bar causes of action not previously pled is well-established under California law. For instance, the California Court of Appeal has held that a "party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable." *Amin v. Khazindar*, 112 Cal. App. 4th 582, 589-90 (2003); *see also Ione Valley Land, Air, & Water defense Alliance, LLC v. Cty. of Amador*, 33 Cal. App. 5th 165, 171 (2019) ("[T]hese contentions are barred by res judicata because they were, or could have been, raised in [plaintiff's] first petition."); *Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562, 598 (2010) (holding that there is a "well established res judicata principle that a judgment is binding not only as to a claim actually raised, but also as to those matters that might have been raised in support of the claim actually raised"); *Interinsurance Exchange of the Auto. Club v. Superior Court*, 209 Cal. App. 3d 177, 182 (1989) ("Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.").

In Plaintiff's Petition for Writ of Administrative Mandamus, Plaintiff did not explicitly advance a free speech and due process cause of action under the California Constitution. *See generally* ECF No. 37-1, Ex. C. Nonetheless, Plaintiff's Petition for Writ of Administrative Mandamus and the instant case "involve the same injury to the plaintiff and the same wrong by the defendant." *Harper*, 2012 WL 195040, at *5. Thus, Plaintiff's California Constitution claim is barred by claim preclusion. Below, the Court first addresses Plaintiff's free speech claim under the

California Constitution, then Plaintiff's due process claim under the California Constitution.

   a.  Free Speech

In the Petition for Writ of Administrative Mandamus, Plaintiff explicitly acknowledged that there are free speech issues at stake. Specifically, Plaintiff stated that the proposed 30-day suspension of Plaintiff's entertainment permit "interrupts [Plaintiff's] First Amendment rights to present live entertainment, as well as the rights of its customers to listen and hear that entertainment." ECF No. 37-1, Ex. C at 4. Thus, Plaintiff openly acknowledged that there are free speech issues implicated by suspending Plaintiff's entertainment permit, albeit in the federal First Amendment context. The fact that Defendant did not explicitly mention the California Constitution is irrelevant because by having its entertainment license suspended for 30 days, Plaintiff allegedly suffered the same deprivation of speech rights under either the federal Constitution or the California Constitution.

Moreover, the same wrongs by Defendant are alleged in Plaintiff's Petition for Writ of Administrative Mandamus. Specifically, Plaintiff argued, *inter alia*, that: Defendant wrongfully found that Plaintiff's operation creates or results in a public nuisance, *id.* at 9; as part of the administrative hearing before deputy chief of police Bustillos, Defendant withheld evidence from Plaintiff, *id.* at 11; deputy chief of police Bustillos was biased, *id.* at 12; and Plaintiff should not be held responsible for Embay's actions, *id.* at 8. All of these allegedly wrongful actions cited in the Petition for Writ of Administrative Mandamus are explicitly mentioned in the SAC.

In addition, Plaintiff's Petition for Writ of Administrative Mandamus was filed on March 12, 2018, *id.* at i, *after* Plaintiff filed the instant suit before this Court on March 1, 2018, ECF No. 1. Thus, Plaintiff clearly could have made arguments regarding free speech under the California Constitution in the Petition for Writ of Administrative Mandamus because days earlier, Plaintiff made those exact claims in Plaintiff's complaint in the instant suit, ECF No. 1 at ¶ 54-56.

In sum, the same primary right is at stake before the Superior Court and before this Court because Plaintiff's Petition for Writ of Administrative Mandamus and the SAC "involve the same

injury to the plaintiff and the same wrong by the defendant." *Harper*, 2012 WL 195040, at *5. An analogous case is *Harper*. The *Harper* plaintiff first brought suit in state court alleging "denial of equal protection, deprivation of due process, takings without notice, theft, fear of reprisal, and failure to provide honest government services, all stemming from Defendants' towing of his vehicle." *Id.* The state court granted the defendants' demurrer and dismissed the case. *Id.* at *2. The *Harper* plaintiff then brought suit in federal court for violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, none of which were expressly alleged in the state court action. *Id.* at *5. The *Harper* court found that claim preclusion barred the plaintiff from asserting his claims in federal court because "the harm suffered in both actions—the towing of his vehicle by Defendants in violation of [plaintiff's] civil rights—is identical." *Id.* In addition, "both the state action and the instant one arise from the same incident, involving the same actors . . . allegedly performing the same act." *Id.* The *Harper* court concluded that the plaintiff "is seeking to vindicate the same primary right in federal court as he was previously in state court." *Id.*

Likewise, here, the harm Plaintiff suffered in both actions (the instant case and the Petition for Writ of Administrative Mandamus) is identical because Plaintiff was punished with a 30-day suspension of Plaintiff's entertainment permit. Moreover, both the state Petition and the instant case arise from the same incident, the Lucci event, involving the same actors—Plaintiff, Defendant, Embay, and the subsequent administrative proceedings such as the administrative hearing and the Appeal Hearings Board—performing the same acts as alleged in both the SAC and the Petition for Writ of Administrative Mandamus. Thus, Plaintiff seeks to vindicate the same primary right in both the state Petition for Writ of Administrative Mandamus and the instant case.

### b. Due Process

In the Petition for Writ of Administrative Mandamus, Defendant alleged various violations of Defendant's due process right which are identical to those alleged in the SAC. Both the state Petition and the instant case involve the same harm to Plaintiff: a 30-day suspension of Plaintiff's entertainment permit. Moreover, the state Petition for Writ of Administrative Mandamus and the

instant case implicate the same alleged wrongs by Defendant. Specifically, in the Petition for Writ of Administrative Mandamus, Plaintiff alleged that Defendant improperly withheld evidence and that Plaintiff did not receive a fair and unbiased administrative hearing. ECF No. 37-1, Ex. C at ii. Likewise, in the SAC, Plaintiff alleges that the administrative hearing conducted by deputy chief of police Bustillos was unfair and biased because Bustillos was tasked with reviewing an entertainment permit revocation decision issued by Bustillos' direct supervisor, chief of police Edgardo Garcia. SAC at ¶ 81. Also in the SAC, Plaintiff alleges that Defendant withheld evidence, namely, the identities of witnesses to the shooting. *Id.* at ¶ 77. Thus, Plaintiff is attempting to vindicate the same primary right in both the state Petition and the instant case.

### 2. The Same Parties

Both the state Petition and the instant case involve the same parties. In the state Petition, Plaintiff was the petitioner and Defendant was the respondent. ECF No. 37-1, Ex. C at i. As for the instant case, Diamond S.J. Enterprise, Inc. is Plaintiff and the City of San Jose is Defendant. SAC at p. 1.

### 3. Final Judgment on the Merits

The Superior Court issued a judgment on the merits. *See* ECF No. 56, Ex. D. Specifically, the "Court read and considered the evidence, and the pleadings. The Court heard and considered the oral argument." *Id.* at 2. Ultimately, the Superior Court ruled that the "administrative decision is supported by substantial evidence at the administrative hearing. . . . The writ is denied." *Id.* at 2-3.

### 4. Summary

All 3 of the requirements for claim preclusion to apply under California law have been met. The instant suit and Plaintiff's Petition for Writ of Administrative Mandamus involve the same primary rights between the same parties after a final judgment on the merits was reached in the Superior Court proceedings. Therefore, Plaintiff's fourth cause of action—interference with free speech and due process rights secured by the California Constitution—is barred from being

46

asserted in the instant action by claim preclusion. Thus, Defendant's motion to dismiss Plaintiff's fourth cause of action is GRANTED. The Court finds that granting leave to amend would be futile and unduly prejudicial to Defendant. *Leadsinger, Inc.*, 512 F.3d at 532. It would be futile to amend the SAC when the Court has determined that claim preclusion bars Plaintiff's claims here, and it would unduly prejudice Defendant to litigate a claim that fails as a matter of law. Thus, leave to amend is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss the following claims with prejudice:

1. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.62.040 is a prior restraint under the First Amendment;

2. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.62.360(B) is a prior restraint under the First Amendment;

3. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.60.290 is a prior restraint under the First Amendment;

4. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.60.370(L) is a prior restraint under the First Amendment;

5. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.60.383(F) is a prior restraint under the First Amendment;

6. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 1.13.050 is a prior restraint under the First Amendment;

7. Plaintiff's 42 U.S.C. § 1983 claim that Cal. Civ. Code § 3479 is a prior restraint under the First Amendment;

8. Plaintiff's 42 U.S.C. § 1983 claim that Cal. Civ. Code § 3480 is a prior restraint under the First Amendment;

9. Plaintiff's 42 U.S.C. § 1983 claim that SJMC § 6.60.240 is a prior restraint under

United States District Court
Northern District of California

the First Amendment;

10. Plaintiff's 42 U.S.C. § 1983 due process claim under the Fourteenth Amendment;

11. Plaintiff's 42 U.S.C. § 1983 procedural due process claim under the Fourteenth Amendment;

12. Plaintiff's free speech claim under the California Constitution;

13. Plaintiff's due process claim under the California Constitution.

The Court GRANTS Defendant's motion to strike paragraph 55 of the second amended complaint.

The Court DENIES Defendant's motion to strike paragraph 63 of the second amended complaint.

**IT IS SO ORDERED.**

Dated: July 1, 2019

LUCY H. KOH
United States District Judge

Case No. 18-CV-01353-LHK
ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE