UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIAMOND S.J. ENTERPRISE, INC., | Case No. 18-CV-01353-LHK |
| Plaintiff, | |
| | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| THE CITY OF SAN JOSE, | |
| Defendant. | Re: Dkt. Nos. 102, 103 |

Before the Court is Defendant City of San Jose's motion for summary judgment, ECF No. 102, and Plaintiff Diamond S.J. Enterprise, Inc.'s cross-motion for partial summary judgment, ECF No. 103. Both motions have been fully briefed. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion for partial summary judgment.

## I.    BACKGROUND

### A.  Factual Background

Defendant's version of the facts is drawn from its request for judicial notice of the state administrative record, ECF No. 102-1 ("RJN"). Plaintiff also asks the Court to adopt Defendant's

statement of facts for purposes of summary judgment. Pl.'s Mot. at 1. A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). The Court GRANTS Defendant's request for judicial notice. The Court also grants Plaintiff's request that the Court adopt Defendant's statement of facts for purposes of the instant motions.

Plaintiff Diamond S.J. Enterprise, Inc. operates a nightclub called SJ Live, sometimes referred to as Studio 8. The nightclub is owned by Jenny Wolfes, who also owns two other clubs. Plaintiff's patrons generally reserve tables and agree to purchase bottles of alcohol, referred to as "table service" or "bottle service," rather than paying in advance.

Daniel Embay, an event promoter, approached Wolfes to have her book an artist named "Lucci," whom Wolfes agreed to book for the evening of May 27, 2017. However, during the event, Wolfes realized that Embay had collected money from some people in advance for table service. Wolfes believed that Embay had "double-booked" tables, when Embay was not supposed to book any tables at all. Wolfes responded by telling Embay, "We're done." Wolfes paid Embay approximately $5,000, cancelled the entertainment, and asked Embay to leave. Embay then threatened Wolfes in front of security guards. Wolfes soon closed the front door.

San Jose Police Officer Condon was later called to the scene to respond to a call reporting that a shooting took place at approximately 1:30 a.m. Officer Condon learned that a man, later identified as Embay, exited Plaintiff's establishment, walked to his car, and retrieved a gun from the trunk. Embay purportedly walked toward a group of approximately ten people with his gun, and several people were seen ducking and running out of his way. Embay fired his gun multiple times before he returned to his car and drove out of the parking lot.

Upon reviewing the footage, the San Jose Police Department noticed a number of security violations. For example, the outside area of the club was not cleared once the club decided to close its front door. Wolfes estimated that 40 to 50 people were in line when the doors were

closed. Wolfes explained that people who were told they would have a table that night became angry once the doors closed, and they stormed the front door. Wolfes also acknowledged that she had not secured an indemnification agreement with Embay prior to the event.

On July 17, 2017, the San Jose Police Chief issued a Notice of Intended Action to Revoke Entertainment Permit to Plaintiff. Plaintiff requested an administrative hearing to review Defendant's intended revocation of SJ Live's entertainment permit. On October 11, 2017, an administrative hearing was held before deputy chief of police Mark Bustillos. On November 17, 2017, Bustillos issued a "Notice of and Decision on Intended Action to Revoke Entertainment Permit, in which Defendant announced its decision to suspend SJ Live's entertainment permit for thirty days," in lieu of completely revoking the entertainment permit. Bustillos found that Plaintiff violated SJMC Chapter 6.60 by hiring an unlicensed promoter for whom Plaintiff was responsible and by creating a public nuisance.

SJ Live then appealed the suspension to the Appeal Hearings Board, which held a hearing on February 8, 2018. In its written decision mailed on February 26, 2018, the Board rejected the administrative hearing's finding regarding the hiring of an unlicensed promoter but upheld the public nuisance charge. Thus, the Board affirmed the suspension of SJ Live's entertainment permit for 30 days.

**B. Procedural History**

On March 1, 2018, Plaintiff brought suit in this Court against Defendant. ECF No. 1. The complaint was accompanied by an ex parte motion for a temporary restraining order. ECF No. 2. The temporary restraining order was denied without prejudice on March 1, 2018. ECF No. 12. On March 2, 2018, Plaintiff filed an amended motion for a temporary restraining order. ECF No. 15. That same day, the Court directed the Plaintiff to serve Defendant and ordered Defendant to respond. ECF No. 18. On March 2, 2018, the Court denied Plaintiff's amended motion for a temporary restraining order. ECF No. 22.

On June 20, 2018, Plaintiff filed a first amended complaint ("FAC"). ECF No. 32.

Case No. 18-CV-01353-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant filed its motion to dismiss and/or strike the FAC on July 20, 2018, ECF No. 37, which the Court granted in part and denied as moot in part, ECF No. 51.

On November 28, 2018, Plaintiff filed a second amended complaint. ECF No. 54 ("Second Amended Complaint," or "SAC"). The SAC alleges four claims for relief against Defendant: (1) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights, pursuant to theories of overbreadth, vagueness, and prior restraint; (2) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's Fourteenth Amendment due process rights for impermissible vagueness; (3) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's Fourteenth Amendment due process rights to a fair hearing; and (4) a claim under the California Constitution for interference with free speech and due process rights. *Id.*

On December 12, 2018, Defendant filed a motion to dismiss, for judgment on the pleadings, and/or to strike the SAC. ECF No. 55. On July 1, 2019, the Court granted Defendant's motion in part and dismissed all of Plaintiff's claims, with the exception of its First Amendment claim based on theories of overbreadth and vagueness ("MTD Order"). ECF No. 82. On September 5, 2019, the Court denied Plaintiff's request to file a motion for reconsideration and denied Plaintiff leave to amend the Second Amended Complaint. ECF No. 97.

On October 31, 2019, Defendant filed a motion for judgment on the pleadings, summary judgment, and/or partial summary judgment, ECF No. 102 ("Def's Mot."). On November 14, 2019, Plaintiff filed an opposition, ECF No. 105 ("Opp'n to Def.'s Mot."), and Defendant filed a reply on November 21, 2019, ECF No, 107 ("Reply to Def's Mot.).

Plaintiff filed a cross-motion for partial summary judgment, ECF No. 103 ("Pl.'s Mot."). On November 14, 2019, Defendant filed an opposition, ECF No. 104 ("Opp'n to Pl.'s Mot."), and Plaintiff filed a reply on November 21, 2019, ECF No. 107 ("Reply to Pl.'s Mot."). Defendant filed an amended opposition on November 22, 2019, ECF No. 108, which only added a sentence to the table of contents.

In its opposition, Defendant objects to evidence cited by Plaintiff in support of Plaintiff's

cross-motion for partial summary judgment. Specifically, Defendant objects to paragraphs 4, 8, and 9 of the Declaration of Jenny Wolfes, ECF No. 103-1, on grounds of relevance and lack of foundation. Opp'n to Pl.'s Mot. at 2. Defendant also objects to Plaintiff's citations to its own unverified complaint as evidence. *Id.* However, even considering the evidence to which Defendant objects, the Court denies Plaintiff's cross-motion for partial summary judgment and grants Defendant's motion for summary judgment, as explained below. Accordingly, the Court overrules the objections as moot.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Santillan v. USA Waste of Cal., Inc.*,

5

853 F.3d 1035, 1043 n.8 (9th Cir. 2017).

## B. First Amendment

### 1. Protected Speech

"The First Amendment applies to state laws and regulations through the Due Process Clause of the Fourteenth Amendment." *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000). Although the First Amendment protects "the freedom of speech," U.S. Const. amend I, its protections are not limitless. The United States Supreme Court has distinguished between "restrictions on protected expression," which are subject to First Amendment scrutiny, and "restrictions on economic activity or, more generally, on nonexpressive conduct," which do not ordinarily implicate the First Amendment's protections. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

However, not every law can be easily categorized as either directed at protected expression or directed at commerce or conduct because "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). The First Amendment may be implicated where "'speech' and 'nonspeech' elements are combined in the same course of conduct," *see United States v. O'Brien*, 391 U.S. 367, 376 (1968), although merely "incidental burdens on speech" are not alone sufficient to trigger First Amendment protections, *Sorrell*, 564 U.S. at 567.

Accordingly, to determine whether a governmental restriction on conduct with both expressive and nonexpressive elements implicates the First Amendment, the "threshold question is whether conduct with a 'significant expressive element' drew the legal remedy or the ordinance has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) (quoting *Arcara*, 478 U.S. at 706–07). Put another way, a regulation does not implicate the freedom of expression unless nonexpressive conduct "intimately related to expressive conduct" led the government to sanction the plaintiff or the regulation uniquely impacts those engaged in expressive activity. *Arcara*, 478

United States District Court
Northern District of California

U.S. at 706 n.3. "A court may consider the 'inevitable effect of a statute on its face,' as well as a statute's 'stated purpose.'" *Sorrell*, 564 U.S. at 565. "However, absent narrow circumstances, a court may not conduct an inquiry into legislative purpose or motive beyond what is stated within the statute itself." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (citing *O'Brien*, 391 U.S. at 383 n.30).

### 2. Overbreadth

"A constitutional challenge based on overbreadth is a challenge to the facial validity of a statute or regulation." *United States v. Szabo*, 760 F.3d 997, 1003–04 (9th Cir. 2014). In an overbreadth challenge, the litigant asserts that a governmental restriction reaches so broadly that it deters expression protected by the First Amendment. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65–66 (1981). "In the First Amendment context, the Court has permitted attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977). However, given this exception to normal standing requirements, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). Thus, "[t]he overbreadth doctrine is inapposite to a case in which First Amendment protections are not implicated." *United States v. Dang*, 488 F.3d 1135, 1142 (9th Cir. 2007).

"Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the United States Supreme Court has "recognized that the overbreadth doctrine is 'strong medicine' and ha[s] employed it with hesitation, and then 'only as a last resort.'" *Szabo*, 760 F.3d at 1004 (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38–40 (1999)). "[A] facial freedom of speech attack must fail unless, at a minimum, the challenged statute 'is directed narrowly and specifically at expression or conduct commonly associated with expression.'"

United States District Court
Northern District of California

*Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996). "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

### 3. Vagueness

The void-for-vagueness doctrine ordinarily raises due process concerns. *See Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997). Specifically, due process requires an ordinance to "(1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Id.* However, "when First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). As with First Amendment overbreadth doctrine, First Amendment vagueness challenges seek to strike restrictions that may chill protected speech. *Id.* "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)). By contrast, regulations of non-protected conduct, like "the economic behavior of businesses," do not trigger a heightened need for definiteness. *Nunez*, 114 F.3d at 940.

In a facial First Amendment vagueness challenge, "the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct." *Nunez*, 114 F.3d at 940 (citing *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)). Given the more stringent review applicable to a First Amendment vagueness claim, a litigant may only raise such a claim in a facial challenge where "the statute clearly implicates free speech rights." *Cal. Teachers Ass'n*, 271 F.3d at 1149.

## III. DISCUSSION

In Plaintiff's only surviving cause of action, Plaintiff brings a claim under 42 U.S.C. § 1983 that alleges that Defendant's city ordinances violated Plaintiff's First Amendment rights to free speech. SAC ¶¶ 52–66. Plaintiff's claim originally comprised multiple theories of violations under the First Amendment doctrines of prior restraint, overbreadth, and vagueness. *Id.* Because the Court dismissed with prejudice Plaintiff's theory that the challenged ordinances impose an impermissible prior restraint on speech, *see* MTD Order 10–31, the only two First Amendment theories remaining are based on overbreadth and vagueness. *See* Def.'s Mot. at 8 (citing ECF No. 102-2 ("Zoglin Decl."), Exs. G, I). Plaintiff's claim alleges that San Jose Municipal Code Chapter 6.60, which regulates public entertainment businesses, and Chapter 6.62, which regulates event promoters, are overbroad and vague, and thus violate Plaintiff's First Amendment rights to free speech. The Court addresses Plaintiff's claims as to each Chapter in turn.

**A. SJMC Chapter 6.60**

SJMC Chapter 6.60 of the San Jose Municipal Code requires certain public entertainment businesses to obtain a valid permit from Defendant and sets forth the permitting scheme. Section 6.60.028 defines "public entertainment" to include dancing, singing, entertainment that includes audience participation, or live entertainment. Section 6.60.030 defines a "public entertainment business" to be "a business open to the public where alcohol is sold on the premises, the premises has a maximum occupant load that exceeds one hundred persons, . . . and where one or more public entertainment activities are also provided or allowed."[1] Chapter 6.60. *Id.* § 6.60.040.

As to SJMC Chapter 6.60, Defendant moves for summary judgment with respect to Plaintiff's claim that section 6.60.240 violates its First Amendment rights. Def's Mot. at 9–11. Defendant also moves for summary judgment with respect to Plaintiff's claim that sections 6.60.290, 6.60.370(L), and 6.60.383(F) (collectively, the "Nuisance Provisions") violate Plaintiff's First Amendment rights. Def's Mot. at 11–19. Plaintiff moves for partial summary judgment that

---

[1] The provision does not apply to "taverns, bars, lounges, cocktail lounges and other drinking establishments" where "no other public entertainment is provided or allowed." SJMC § 6.60.030(B).

9

Chapter 6.60 in its entirety violates Plaintiff's First Amendment rights. Pl.'s Mot. at 4–14. The Court first considers section 6.60.240, then the Nuisance Provisions, and finally, Chapter 6.60 as a whole.

### 1. SJMC section 6.60.240

Plaintiff claims that section 6.60.240 violates the First Amendment because the section is both overbroad and vague as applied to Plaintiff. Opp'n to Def.'s Mot. at 4. Defendant argues that Plaintiff's challenges to section 6.60.240 fail because the Court's MTD Order already found that section 6.60.240 does not implicate the First Amendment. Def.'s Mot. at 9–11. The Court agrees that section 6.60.240 does not implicate the First Amendment, and therefore need not consider whether the ordinance is overbroad or vague.

SJMC section 6.60.240 is a provision requiring permitted public entertainment businesses to make certain arrangements for security. Section 6.60.240 states in part: "[t]he permittee shall comply with, and ensure that the permittee's owners, managers and employees comply with the standards for internal and external security arrangements specified below." The ordinance then lists ten requirements for security personnel at a permitted business, such as: "There shall be a minimum of one security personnel on duty for up to and including the first fifty patrons on site. Once the number of patrons exceeds fifty, there shall be an additional one security personnel on duty for up to and including every additional fifty patrons on site." SJMC § 6.60.240(A)(1).

Plaintiff's First Amendment challenges to this provision fail because section 6.60.240 does not implicate the First Amendment. In fact, the Court squarely held in its MTD Order that section 6.60.240 is "not an ordinance that implicates any First Amendment rights." MTD Order at 27. The Court so held because "[t]here is no plausible way to read SJMC section 6.60.240 to implicate expressive activity, as the ordinance purely regulates the provision of security at permitted businesses." The Court likened the security provision to the Seattle minimum wage ordinance upheld by the Ninth Circuit in *International Franchise*, which the Ninth Circuit explained was "plainly an economic regulation that does not target speech or expressive conduct." 803 F.3d at

408. The Court is "generally preclude[d]" by law-of-the-case doctrine "from reconsidering an issue decided previously by the same court or by a higher court in the identical case." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). Thus, as Defendant notes, the Court's prior holding that section 6.60.240 does not implicate the First Amendment "applies equally to Plaintiff's overbreadth and vagueness claims" based on the First Amendment. Reply to Def.'s Mot. at 1. The Court accordingly GRANTS Defendant's motion for summary judgment with respect to Plaintiff's claim that section 6.60.240 violates Plaintiff's First Amendment rights.

### 2. SJMC sections 6.60.290, 6.60.370(L), and 6.60.383(F)

Plaintiff calls SJMC §§ 6.60.290, 6.60.370(L), and 6.60.383(F) the "Nuisance Provisions," SAC at ¶ 62, and the Court will do the same. Because the Nuisance Provisions operate similarly to prohibit public entertainment permittees from conducting its business in a manner that creates a public nuisance, the Court addresses them together.

Plaintiff argues that the Nuisance Provisions violate Plaintiff's First Amendment rights because the Nuisance Provisions are overbroad and vague. Opp'n to Def.'s Mot. at 8–15. Defendant argues that the Nuisance Provisions do not implicate the First Amendment and that, even if they did, they are not impermissibly overbroad or vague. Def.'s Mot. at 9–18. The Court agrees that the Nuisance Provisions do not implicate the First Amendment and thus need not decide whether the Nuisance Provisions are overbroad or vague.

The Nuisance Provisions prohibit public entertainment businesses from operating in a manner that creates a public nuisance. Specifically, SJMC section 6.60.290 states:

> The permittee shall not conduct the permitted business in a manner that creates or results in a public nuisance, as defined in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty (150) feet of the permitted premises.

Similarly, SJMC section 6.60.370(L) states:

> An application for an entertainment permit or entertainment license shall be denied, and an entertainment permit or entertainment license issued pursuant to this title may be suspended or revoked by the chief of police upon any of the following grounds: . . . .

11

> The Applicant, licensee or permittee has conducted the public entertainment business, in a manner that creates or results in a public nuisance, as defined in Section 1.13.050 of this code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty feet of the premises . . . .

Finally, SJMC section 6.60.383(F) states:

> An application to renew an entertainment permit or entertainment license shall be denied by the chief of police upon any of the following grounds: . . . .

> The premises or the public entertainment business has been the subject of an administrative, civil or criminal nuisance abatement action and court judgment or administrative determination finding the premises or the public entertainment business to be a nuisance within the past five years . . . .

The Nuisance Provisions therefore prohibit a permitted public entertainment business from operating in a manner that creates a public nuisance, at the risk of suspension, revocation, or denial of its permit.

Sections 6.60.290 and 6.60.370(L) explicitly reference the following other laws to define "public nuisance": SJMC section 1.13.050, and California Civil Code sections 3479 and 3480. First, SJMC section 1.13.050 lists 15 behaviors—for instance, drinking alcoholic beverages in public, public urination, and prostitution—as examples of public nuisances, and also states that a public nuisance is the "maintenance or use of property in the city in a manner that jeopardizes or endangers the health, safety or welfare of persons on the premises or in the surrounding area . . . ." Second, California Civil Code section 3479 states:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Finally, California Civil Code section 3480 states that a "public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

The Court finds that the Nuisance Provisions do not implicate Plaintiff's First Amendment rights because they regulate non-expressive conduct, not speech. *See Arcara*, 478 U.S. at 706. The Nuisance Provisions prohibit Plaintiff from "*conduct[ing]* the permitted business in a manner

12

that creates or results in a public nuisance." SJMC §§ 6.60.290 (emphasis added); *see also* 6.60.370(L). Plaintiff makes no argument that conduct creating a public nuisance is itself expressive. *See* Opp'n to Def.'s Mot. at 8–10. Thus, because the Nuisance Provisions clearly impose "restrictions on economic activity or, more generally, on nonexpressive conduct," they are distinct from restrictions on protected expression and do not implicate the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

Plaintiff attempts to get around this result by arguing that the Nuisance Provisions target "expressive business[es]." *See* Opp'n to Def.'s Mot. at 9. Plaintiff contends that the Nuisance Provisions are "part of a licensing scheme that singles out expressive activity, public entertainment, and subjects those who wish to provide public entertainment to the unique burden of applying for and maintaining a public entertainment permit." *Id.* Thus, under Plaintiff's argument, the ordinance implicates the First Amendment because it "has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n, Inc.*, 803 F.3d at 408 (quoting *Arcara*, 478 U.S. at 706–07).

In *Arcara*, the United States Supreme Court cited *Minneapolis Star* as an example of a statute "singling out those engaged in expressive activity." *Arcara*, 478 U.S. at 706–07 (citing *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983)). The statute at issue in *Minneapolis Star* imposed a "'use tax' on the cost of paper and ink products consumed in the production of a publication." *Minneapolis Star*, 460 U.S. at 577. The United States Supreme Court found that the "special use tax . . . is without parallel in the State's tax scheme" because the tax departed from "the ordinary rule in Minnesota," which was to "tax only the ultimate, or retail, sale rather than the use of components like ink and paper." *Id.* at 581–82. The United States Supreme Court concluded that "Minnesota has singled out the press for special treatment." *Id.* at 582. Accordingly, the United States Supreme Court found that the First Amendment was implicated and proceeded to evaluate whether the special tax could withstand First Amendment scrutiny. *Id.*

13

In light of this precedent, the Court cannot agree that the Nuisance Provisions here have the effect of singling out those engaged in expressive activity.  Although Plaintiff is correct that the Nuisance Provisions are incorporated into the public entertainment permitting scheme, Plaintiff concedes that "California and San Jose's nuisance laws . . . apply to all businesses." Opp'n to Def's Mot. at 9.  Moreover, title 6 of the San Jose Municipal Code explicitly subjects a multitude of non-expressive businesses, such as bingo and retail businesses, to the same or similar nuisance provisions as a condition for a permit or license.  *See, e.g.*, SJMC § 6.16.120 (permit for bingo subject to nuisance conditions); § 6.87.455 (license for tobacco retail subject to nuisance conditions); § 6.88.330 (registration for cannabis business subject to nuisance conditions).  In fact, every single license or permit set forth in Title 6 of the San Jose Municipal Code, "Business Licenses and Regulations," is generally subject to "[d]enial, suspension or revocation" for conduct "that creates or results in a public nuisance, as defined in Section 1.13.050 of this Code or Sections 3479 and 3480 of the California Civil Code, on or within one hundred fifty feet of the licensed or permitted premise." SJMC § 6.02.130.  These ubiquitous nuisance conditions are thus worlds apart from the special use tax applied only to the press in *Minneapolis Star*, which the United States Supreme Court found to be "without parallel" in the state's tax scheme.  *Id.* at 582.

The Court concludes that the Nuisance Provisions regulate nonexpressive conduct and do not "single out those engaged in expressive activity." *See Arcara*, 478 U.S. at 706–07.  As such, the Nuisance Provisions do not implicate the First Amendment as a matter of law, and the Court GRANTS Defendant's motion for summary judgment as to SJMC sections 6.60.290, 6.60.370(L), and 6.60.383(F).

### 3. SJMC Chapter 6.60 as a whole

SJMC Chapter 6.60 sets forth the overall permitting framework for public entertainment businesses.  Plaintiff argues that SJMC Chapter 6.60 violates Plaintiff's First Amendment rights because the permitting framework is overbroad.  *See* Pl. Mot. at 5–14.  Plaintiff asks the Court to consider a facial challenge to Chapter 6.60 in its totality, rather than piecemeal by subsection,

14

because "[o]ne cannot simply look at the subsections and reason that because an individual element is not directed at expressive activity, the particular subsection does not warrant First Amendment scrutiny." *Id.* at 7. In Plaintiff's reply in support of its motion for partial summary judgment, Plaintiff clarifies that it does not seek as a remedy enjoinment of the entirety of Chapter 6.60, but rather relief from the Nuisance Provisions. Reply to Pl.'s Mot. at 7. However, because Plaintiff's arguments are based on the permitting scheme as a whole, the Court considers separately whether the scheme as a whole violates the First Amendment. The Court finds that Plaintiff's arguments are both foreclosed by the Court's prior rulings and are unsupported by First Amendment precedent.

First, the Court has already rejected Plaintiff's First Amendment claims based on the theory that the ordinances at issue impose an impermissible prior restraint on speech. MTD Order 10–31. As Plaintiff concedes, its arguments that SJMC Chapter 6.60 is facially overbroad "invariably include discussions and citations that discuss the concept of prior restraint." Pl.'s Mot. at 5. Plaintiff further acknowledges that "[c]ourts consistently refer" to theories of overbreadth "as prior restraints." *Id.* Nonetheless, Plaintiff attempts to repackage its arguments that the licensing scheme constitutes an impermissible prior restraint "with no disrespect intended to the Court or its prior ruling." *Id.* Plaintiff offers no reason why the Court should revisit its dismissal of Plaintiff's prior restraint theories; moreover, those findings are binding law of the case. *See Hall*, 697 F.3d at 1067.

Furthermore, Plaintiff has failed to establish that Chapter 6.60 even implicates the First Amendment. The Court concluded above that none of the specific sections of Chapter 6.60 that Plaintiff identified implicate Plaintiff's First Amendment rights. *See supra* Sections III.A.1–2. Plaintiff's theory that Chapter 6.60 operates as a whole to regulate "pure speech" is likewise unpersuasive. Plaintiff argues that Chapter 6.60 regulates speech because Chapter 6.60 defines "public entertainment" as "dancing, singing, audience participation in the entertainment, or live entertainment," Pl.'s Mot. at 5 (quoting SJMC § 6.60.040), and because such activity is expression

protected by the First Amendment, *id.* (citing *Cinevision Corp. v. Burbank*, 745 F.2d 560, 567 (9th Cir. 1984) (holding that music and other forms of entertainment are forms of expression protected by the First Amendment)).

However, Plaintiff's overemphasis on Defendant's definition of "public entertainment" misses the mark. Chapter 6.60 does not directly regulate "public entertainment," but instead regulates "public entertainment businesses," which is "a business open to the public where alcohol is sold on the premises, the premises has a maximum occupant load that exceeds one hundred persons, . . . and where one or more public entertainment activities are also provided or allowed." SJMC § 6.60.030. The permitting scheme set forth in Chapter 6.60 amounts to "restrictions on economic activity or, more generally, on nonexpressive conduct," which are distinct from expression protected by the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

Ninth Circuit precedent has similarly held that these types of business regulations do not implicate the First Amendment, even when businesses may generally engage in protected expression. In *International Franchise*, the plaintiff brought a First Amendment challenge to Seattle's minimum wage ordinance as it pertained to franchised businesses because "two of the three definitional criteria for franchises are based on speech and association." 803 F.3d at 408. However, the Ninth Circuit squarely rejected the plaintiff's claim that the First Amendment was implicated by Seattle's ordinance because the ordinance "is plainly an economic regulation that does not target speech or expressive conduct." *Id.* In the instant case, the requirements of Chapter 6.60 are tantamount to "economic regulation[s]," *id.*, because the regulations govern business aspects of maintaining a public entertainment business, such as regulations on security personnel, SJMC § 6.60.240; indemnification and insurance, § 6.60.210; and on-site managers, § 6.60.255.

Further, Chapter 6.60 "do[es] not target speech or expressive conduct." *Int'l Franchise*, 803 F.3d at 408. Defendant imposes the same or similar licensing requirements broadly to businesses that include automobile dismantlers, SJMC Chapter 6.14; ice cream trucks, SJMC

16

Chapter 6.39; and junk dealers, SJMC Chapter 6.42.  As in *International Franchise*, "the ordinance applies to businesses that have adopted a particular business model, not to any message the businesses express."  803 F.3d 389.  Here, Plaintiff's decision to operate a venue that serves alcohol and accommodates over one hundred patrons triggers the permitting requirements, and Plaintiff is free to adopt other business models, such as discontinuing the service of alcohol, to avoid the need for a permit.  Opp'n to Pl.'s Mot. at 4; *see* SJMC § 6.60.040.

The Court concludes that summary judgment in favor of Defendant is therefore appropriate as to Plaintiff's claim that the entirety of Chapter 6.60 violates its First Amendment rights.  The Court previously dismissed Plaintiff's First Amended Complaint in part because Plaintiff failed to allege "which subparts of [SJMC Chapter 6.60] violate the First Amendment."  ECF No. 51 at 10.  In so doing, the Court admonished Plaintiff to base its claims on particular code sections.  *Id.*  Plaintiff then filed a Second Amended Complaint that specified which sections of the San Jose Municipal Code Plaintiff alleged violated the First Amendment.  *See* SAC ¶¶ 52–66.  Accordingly, Defendant moved for summary judgment as to those specific sections and did not move for summary judgment as to the entirety of SJMC Chapter 6.60.  Despite the Court's instruction to base its First Amendment claims on particular sections, Plaintiff moved for partial summary judgment on the ground that "Chapter 6.60 [is] overbroad on its face."  Pl.'s Mot. at 1.  Nonetheless, as explained above, Plaintiff's claim that Chapter 6.60 viewed as a whole violates the First Amendment fails as a matter of law.  "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party."  *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014).  Because the Court holds that SJMC Chapter 6.60 does not implicate the First Amendment as a matter of law, the Court GRANTS summary judgment in favor of Defendant as to this claim.

### B.  SJMC Chapter 6.62

SJMC Chapter 6.62 sets forth a permitting scheme for event promoters, which Defendant

Case No. 18-CV-01353-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

generally defines as promoters of "public entertainment" activities subject to Chapter 6.60.

As to SJMC Chapter 6.62, Defendant moves for summary judgment with respect to Plaintiff's claim that sections 6.62.050 and 6.62.360(B) violate its First Amendment rights. Def's Mot. at 19–24. Plaintiff moves for partial summary judgment that Chapter 6.62, as a whole, violates its First Amendment rights. Pl.'s Mot. at 14–21. The Court first considers section 6.62.040, section 6.62.360(B), and, finally, Chapter 6.62 as a whole.

### 1. SJMC section 6.62.040

Plaintiff argues that SJMC section 6.62.040, which provides the definition of an "event promoter," violates Plaintiff's First Amendment rights because the section is vague and overbroad. Defendant moves for summary judgment on the grounds that this section, which merely defines who Defendant considers to be an "event promoter," does not implicate the First Amendment. The Court agrees that section 6.62.040 does not implicate the First Amendment and thus need not consider whether the section is overbroad or vague.

SJMC section 6.62.040 defines "event promoter" as any person who:

1. Is directly or indirectly responsible for the promotion of an event as evidenced by activities such as, but not limited to contracting with the principals, selecting entertainment, advertising or otherwise holding out the event to members of the general public, inviting participants to the event, renting or controlling the event site, or serving as a designated on-site representative while the event is occurring as provided in Section 6.62.350 of this chapter; and

2. In exchange for engaging in the promotion of the event, as described in Section 6.62.040A.1., directly or indirectly receives or shares in any of the following:

   a. Admission or entrance fees paid by participants or spectators;

   b. Compensation, consideration or other revenue from sponsors, private donors or managers and/or owners of the event site; or

   c. Revenues from concessions or other sales at the event.

As evident from the face of this section, this definition in and of itself does not impose any restrictions whatsoever. Plaintiff makes no argument that this section itself imposes any restrictions on protected expression, but rather argues that "if a person desires to promote live entertainment, he or she must obtain a promoter license and in turn must comply with all the

United States District Court
Northern District of California

provisions of § 6.62." Opp'n to Def.'s Mot. at 15. Plaintiff thus concedes that section 6.62.040 itself does not impose any restrictions on protected expression.

Because section 6.62.040 does not impose any "restrictions on protected expression," the Court finds that this section does not implicate the First Amendment as a matter of law. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's First Amendment claim based on section 6.62.040.

### 2. SJMC section 6.62.360(B)

Plaintiff argues that SJMC section 6.62.360(B) violates Plaintiff's First Amendment rights because the section is vague and overbroad. Defendant moves for summary judgment on the grounds that section 6.62.360(B) does not implicate the First Amendment, and because the section is not otherwise overbroad or vague. The Court agrees that section 6.62.360(B) does not implicate the First Amendment, and therefore need not address whether the section is overbroad or vague.

On its face, section 6.62.360(B) does not contain any restrictions on any expression protected by the First Amendment. SJMC section 6.62.360(B) states:

> Each event promoter, and any other persons responsible for the operation of the event site, excluding the city, its agents, officers and employees, shall be jointly and severally liable for:
>
> 1. Any violation of this chapter;
>
> 2. Any violation of any other license or permit required by the event; and
>
> 3. Any violation of any other applicable law that arises out of the promotion of the event.

Plaintiff presents no argument that section 6.62.360(B) regulates speech. Instead, Plaintiff merely incorporates by reference Plaintiff's argument that it is a public entertainment business and enjoys First Amendment rights. *See* Opp'n to Def.'s Mot. at 19.

In its MTD Order, the Court acknowledged that "the existence of a First Amendment right for event promoters is not in doubt," but that such a conclusion does not establish that every restriction on an event promoter automatically impinges First Amendment rights. MTD Order at

19

15–16. In response, Plaintiff merely states that, "[i]f an event promoter violates any provision of the event promoter licensing scheme set forth in § 6.62, the promoter and any public entertainment permittee who engages them can have their license suspended or revoked." Opp'n to Def.'s Mot. at 19. Again, this reasoning concedes that Chapter 6.62 generally and provisions therein are the source of any restrictions, not section 6.62.360(B) itself. Plaintiff has failed to identify a single restriction on protected expression in section 6.62.360(B) itself.

Because section 6.62.360(B) itself does not impose any "restrictions on protected expression," the Court finds that the section does not implicate the First Amendment as a matter of law. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's First Amendment claims based on section 6.62.360(B).

### 3. SJMC Chapter 6.62 viewed as a whole

Plaintiff argues that Chapter 6.62, the permitting scheme for event promoters, is unconstitutional as a whole because the Chapter implicates the First Amendment and because the Chapter's framework fails to establish a time limit in which the permit must be processed as required by the First Amendment. Pl.'s Mot. at 14–17. Defendant argues that this theory is not properly before the Court and that Chapter 6.60 does not otherwise implicate the First Amendment. Opp'n to Pl.'s Mot. at 11–16. Defendant also argues that Plaintiff lacks standing to assert this theory. *Id.* at 16. Because the Court finds that the theory is not properly before the Court, the Court need not consider whether Chapter 6.62 implicates the First Amendment nor whether Plaintiff lacks standing to pursue this theory.

The Court finds that Plaintiff's timing theory did not survive the Court's MTD Order. First, there is no allegation in the Second Amended Complaint or identified by Plaintiff in the interrogatories that identifies the timing of the permitting application process as constitutionally defective. Specifically, Plaintiff now moves for partial summary judgment as to Chapter 6.62 on the grounds that "it does not require the Chief of Police to process applications for event promoter

United States District Court
Northern District of California

permits within a brief, specified, and reasonably prompt period of time." Pl.'s Mot. at 14–15. Yet the only allegation in the Second Amended Complaint in which Plaintiff discussed the timing of the permitting process was at paragraph 55, which was stricken by the Court. Paragraph 55 stated:

> The permitting scheme set forth in Chapter § 6.62 requires promoters to be licensed but lacks a specified time for issuing such licenses and is therefore unconstitutional on its face. Specifically, SJMC § 6.62.410 inserts procedures for issuing other forms of permits and licenses into the promoter scheme. Those procedures set forth at SJMC § 6.02.110, do not contain a specific and reasonable time for making a determination on an application. Accordingly, SJMC § 6.62.410 renders the entirety of SJMC § 6.62 unenforceable.

SAC ¶ 55. Paragraph 55 cited section 6.62.410, which is an indemnification provision that states:

> Any person applying for an event promoter permit shall agree to fully indemnify, defend and hold harmless the city, its officers, employees and agents for all claims, losses, or liabilities that arise out of the issuance or use of the event promoter permit or any event promoted pursuant to the permit, in a form approved by the city attorney's office.

Section 6.62.410 thus has nothing to do with the timing of the permitting process. *See id.* In its opposition to Defendant's motion to dismiss, Plaintiff in fact conceded that paragraph 55 was deficient because Plaintiff erroneously discussed section 6.62.410 instead of the correct provision, section 6.62.400. MTD Order at 30. Thus, the Court's MTD Order struck this paragraph from the Second Amended Complaint. *Id.* Plaintiff moved for reconsideration of the Court's MTD Order and for leave to amend on entirely different issues six days before the close of fact discovery, *see* ECF No. 92, which the Court denied, ECF No. 97. Plaintiff's request for reconsideration and leave to amend did not raise paragraph 55 or Plaintiff's permitting process timing claim at all. *See* ECF No. 92. Thus, the Second Amended Complaint remains the operative complaint and does not contain any allegations regarding the timing of the permitting process.

Similarly, in Plaintiff's interrogatory responses that purported to identify all provisions that Plaintiff contended to be overbroad, Plaintiff failed to identify *any* provision relevant to the timing of the permitting process (e.g., SJMC sections 6.02.110, 6.62.400). Opp'n to Pl.'s Mot. at 13 (citing Zoglin Decl., Ex. G at 9–17). Plaintiff argues that Defendant was not prejudiced by Plaintiff's omission of the timing of the permitting process theory from Plaintiff's interrogatory responses. Reply to Pl.'s Mot. at 8. Plaintiff cites a decades-old, out-of-district case to argue that

21

"answers to interrogatories . . . do not limit proof." *Id.* (citing *Clark v. Everett Assocs., Inc.*, No. SA CV 97-351-GLT(EEx), 1998 U.S. Dist. LEXIS 22259, at *4-5 (C.D. Cal. Oct. 26, 1998)). Plaintiff's argument is beside the point. Plaintiff is not presenting new proof in its motion for summary judgment. Instead, Plaintiff is presenting an unpleaded theory of liability. In the Ninth Circuit, "adding a new theory of liability at the summary judgment stage would prejudice the defendant," and courts may decline to consider new theories during summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Plaintiff failed to properly plead its timing theory in the Second Amended Complaint and failed to identify in Plaintiff's interrogatory responses that Plaintiff would pursue this theory of liability. The Court therefore declines to consider this new theory during summary judgment.

Moreover, Plaintiff's arguments about the lack of a timing requirement for the permit process are based on its "prior restraint" theory, which the Court dismissed in its entirety. *See* MTD Order at 10–31. As Defendant argues, Plaintiff relies almost entirely on prior restraint cases to argue that the First Amendment requires a reasonable time limit for issuance of the permit. Opp'n to Pl.'s Mot. at 14. For example, Plaintiff relies primarily upon *FW/PBS*, a case considering a licensing scheme "regulating sexually oriented businesses. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990). The United States Supreme Court struck down the licensing scheme because "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *Id.* at 226. Similarly, Plaintiff repeatedly discusses prior restraint cases to argue that Chapter 6.60 is unconstitutional on its face. *See, e.g.*, *Freedman v. Maryland*, 380 U.S. 51 (1965) (motion picture censorship statute held unconstitutional prior restraint due to lack of timing requirement); *Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001) (adult business licensing scheme subject to facial challenge as a prior restraint due to lack of standards to govern discretion); *Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097 (9th Cir. 1998) (licensing scheme to operate adult bookstore unconstitutional prior restraint due to timing requirement)*, abrogated on other grounds as recognized in Dream Palace*

United States District Court
Northern District of California

1    *v. County of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004).  In short, Plaintiff's claim relies

2    almost entirely on its prior restraint theory, which the Court dismissed.  *See* MTD Order at 10–31.

3         Accordingly, because the Court has stricken or otherwise dismissed all of the allegations

4    that could support Plaintiff's theory that Chapter 6.62 violates its First Amendment rights, the

5    Court concludes that this theory is no longer properly before the Court.  Accordingly, the Court

6    DENIES Plaintiff's motion for summary judgment as to Chapter 6.62.

7         **C. Defendant's Remaining Arguments**

8         As an alternative theory supporting summary judgment, Defendant also argues that res

9    judicata precludes Plaintiff's First Amendment claim.  Def.'s Mot. at 24–25.  Defendant also

10   moves for judgment on the pleadings on the basis that Plaintiff fails to meet the pleading

11   requirements of Fed. R. Civ. P. 8.  *Id.* at 17, 19, 21, 24.  Because the Court grants summary

12   judgment in favor of Defendant with respect to all of Plaintiff's remaining claims, the Court need

13   not reach these arguments.

14   **IV.   CONCLUSION**

15        For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

16   Additionally, the Court GRANTS summary judgment in favor of Defendant as to Plaintiff's First

17   Amendment theory that Chapter 6.60 violates its First Amendment rights.

18        Plaintiff's cross-motion for partial summary judgment is DENIED.

19   **IT IS SO ORDERED.**

20

21   Dated: December 30, 2019

22                                          *Lucy H. Koh*

23                                          LUCY H. KOH
                                           United States District Judge

24

25

26

27
                                              23
28   Case No. 18-CV-01353-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
     CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT